# United States Court of Appeals
## For the First Circuit

No. 04-1024

UNITED STATES OF AMERICA,

Appellee,

v.

ERNESTO LUCIANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

William T. Murphy, for appellant, by appointment of the court.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Adi Goldstein, Assistant United States Attorney, were on brief, for appellee.

July 8, 2005

**TORRUELLA**, **Circuit Judge**.  This appeal focuses on the district court's finding that defendant-appellant Ernesto Luciano used a weapon in connection with an assault, triggering a four-level sentencing enhancement.  Although Luciano pleaded guilty to one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), during sentencing he objected to the enhancement and denied using the weapon in connection with an assault.

On appeal, Luciano argues (1) pursuant to <u>Blakely</u> v. <u>Washington</u>, 124 S. Ct. 2531 (2004), and <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005), that his sentence was improperly enhanced based on facts determined by the district court without a jury; (2) pursuant to <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004), that the district court's reliance on a witness's out-of-court statement to determine the enhancing facts violated his rights under the Confrontation Clause, and (3) that the district court abused its discretion when, in determining the enhancing facts, it relied on out-of-court statements of the only witness to the alleged enhancing crime, without determining that the witness was unavailable.  For the reasons set forth below, we affirm Luciano's sentence.

**I.**

On the night of July 30, 2003, Luciano was arguing with his girlfriend at a bus stop in Providence, Rhode Island.  A nearby teenager, David Camacho, witnessed Luciano pull out a gun and point

it at Luciano's girlfriend.[1]  Camacho flagged down a police cruiser driven by Officer Brian Thornton and told Officer Thornton what he had seen.  He told the officer that the perpetrator was dressed all in orange and pointed to the bus stop where he had seen Luciano. Officer Thornton approached the area of the bus stop and saw Luciano, who was dressed in orange.  He stopped Luciano and ordered him to place his hands on his head.  As Luciano complied with the order, he dropped a loaded gun magazine.  Officer Thornton then frisked Luciano and found a fully loaded .22 caliber semi-automatic pistol.

The Pre-Sentence Report ("PSR") calculated Luciano's base offense level as 24, pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(a)(2), due to Luciano's two prior felony drug convictions.  In paragraph seventeen, the PSR then applied a four-level enhancement based on the fact, determined by the district court judge rather than a jury, that Luciano had used the weapon in connection with an assault with a deadly weapon.  See U.S.S.G. § 2K2.1(b)(5); R.I. Gen. Laws § 11-5-1(a).  After applying a three-level reduction for acceptance of responsibility, the PSR concluded that Luciano's total offense level was 25.  His ten criminal history points placed him in criminal history category V. Thus, the resulting applicable guideline sentencing range ("GSR")

---

[1]  While Luciano later admitted that he possessed the gun, he denied the assault.

was 100-125 months. The statutory maximum, however, was 120 months, and the district court sentenced him to the maximum of 120 months.

Two witnesses testified at the sentencing hearing -- Officer Thornton and Julissa Torres, Luciano's girlfriend and the alleged victim of the assault. The teenage witness, Camacho, did not testify.

Officer Thornton testified that fourteen-year-old David Camacho stopped his cruiser on Broad Street in Providence at 9:40 p.m. on July 30, 2003. The defense objected on the basis of hearsay when the officer began describing what the boy had said. The court overruled the objection, pointing out that hearsay is admissible in a sentencing hearing. Thereafter, Officer Thornton testified that Camacho told him that a man dressed in orange had pointed a gun at him and at the man's girlfriend. The officer also described the demeanor of Julissa Torres as crying, upset and visibly shaken. Officer Thornton testified that as he attempted to ask Torres questions, Luciano was screaming at her in Spanish from the back seat of the cruiser. Torres refused to identify herself and eventually stopped speaking to the officer altogether.

In addition to calling Officer Thornton, the government offered a detective's report of a statement that Camacho made to another Providence Police Detective at the police station later that night. The defense objected that Luciano was not given the

opportunity to cross-examine Camacho. When the court sought clarification concerning the ground for the objection, the defense confirmed that it was a hearsay objection. The government responded that U.S.S.G. § 6A1.3 allows the admission of hearsay at sentencing so long as it is sufficiently reliable. The district court overruled the objection and admitted the report. Later in the hearing, the defense again objected to the use of Camacho's statements without his presence for cross-examination, this time questioning the reliability of the evidence.

The government also offered Camacho's grand jury testimony into evidence. The defense objected on the ground that it was hearsay and not sufficiently reliable. The district court overruled the objection and admitted the exhibit.

Julissa Torres testified that she had known Luciano for one and a half to two years and is still his girlfriend. They were on Broad Street in Providence waiting for a bus and were arguing about a woman who had recently given birth to Luciano's child. Torres stated that, at that time, there was a group of teenagers near the bus stop. She also testified that their arguments had never been physical and that she did not know Luciano had a gun with him until Officer Thornton searched him. Torres stated that Luciano never threatened her with a gun and that he had not pointed a gun at her at the bus stop. She also testified that, while in

the back of the police cruiser, Luciano was yelling in Spanish that she should go to his mother's house.

In ruling that the enhancement was warranted, the district court noted that the defense's objection to Camacho's statements was that they lacked the necessary indicia of reliability and therefore should not be taken into account. The court ruled that there were in fact multiple indicia of the reliability of the hearsay descriptions of the assault, noted that Torres had understandable motives to exonerate Luciano, and that she might not have seen Luciano point the gun at her head if, as Camacho described, Luciano had pointed the gun at the back of her head. The district court ultimately concluded that the government had proven the assault by a preponderance of the evidence and that the four-level enhancement was proper. After denying two motions for downward departure, the district court sentenced Luciano to the statutory maximum of 120 months in prison.

**II.**

**A.  Booker**

Luciano asserts that he is entitled to resentencing in light of Blakely and Booker. At the outset, we must determine whether Luciano has preserved the Booker error. "The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional." United States v. Antonakopoulos, 399 F.3d 68,

76 (1st Cir. 2005). In his supplemental Booker brief, Luciano claims that the Booker error was preserved by trial counsel's repeated objections to the use of hearsay testimony to describe the assault. However, Luciano admits that no reference was made to Apprendi at the time, nor was the argument made that the Guidelines are unconstitutional. In addition, the argument that the Booker error was preserved is contradicted by Luciano's original appellate brief, in which he acknowledged that he did not raise a Blakely-like claim below and that, consequently, the standard of review on appeal is plain error. Thus, we find that the Booker error was not preserved, and we review for plain error. See Antonakopoulos, 399 F.3d at 75.

To prevail under the plain error standard, the appellant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). See also United States v. Olano, 507 U.S. 725, 731-32 (1993). The first two prongs are satisfied "whenever defendant's Guidelines sentence was imposed under a mandatory Guidelines system." Antonakopoulos, 399 F.3d at 77. That is the case here.

However, we "reject[ed] the view that a Blakely [Sixth Amendment] error automatically requires a Booker remand" for

-7-

resentencing. Id. at 79. The district court's finding of "additional facts which raised the sentence authorized solely by the jury verdict or guilty plea . . . is insufficient to meet the third and fourth Olano prongs on plain-error review." Id. For the claim to survive plain error review, this court must find a reasonable probability that advisory Guidelines would have produced a more favorable sentence. Id. at 78-79.

In this case, it appears very unlikely that the district court would have sentenced Luciano more leniently under advisory Guidelines. As it was, the district court rejected two motions for downward departure, rejected the government's more lenient sentence recommendation, and sentenced Luciano to the statutory maximum of 120 months out of an applicable guideline sentencing range of 100-125 months. In so doing, the district court remarked: "In my judgment, I need to send you away long enough to protect the citizens of this state and to impress upon you that this sort of behavior simply will not be tolerated." Thus, while the district court could have given Luciano a lower sentence under the mandatory regime, it emphatically chose not to. Luciano has not cited any additional circumstance which would suggest that the district court would apply a shorter sentence under advisory Guidelines. Given Luciano's failure to establish a reasonable probability of a lower sentence on remand, we find that Luciano's claim fails plain error review.

## B.  **Crawford**

Luciano argues, pursuant to Crawford v. Washington, 541 U.S. 36 (2004), that his Confrontation Clause rights were violated as a result of his inability to cross-examine the witness, Camacho, at the sentencing hearing.[2]  Specifically, Luciano objects to the district court's admission of (1) the testimony of Officer Thornton describing Camacho's assertions, (2) a detective's report of Camacho's statement at the police station and (3) Camacho's grand jury testimony.  The government offered no evidence showing that Camacho was unavailable as a witness or demonstrating efforts to make him available.

As Luciano did not raise this Confrontation Clause or Crawford-type claim in the proceedings below -- defense objections were framed as hearsay and reliability objections -- we review for plain error.  See United States v. Montoya, 967 F.2d 1, 2 & n.4 (1st Cir. 1992).

Prior to Crawford, this court held that the Sixth Amendment right to confront witnesses does not apply at sentencing.

---

[2]  The Sixth Amendment of the Constitution declares, in relevant part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the [a]ssistance of [c]ounsel for his defen[s]e.

U.S. Const. amend. VI.

See United States v. Rodríguez, 336 F.3d 67, 71 (1st Cir. 2003) ("'[A] defendant's Sixth Amendment right to confront the witnesses against him does not attach during the sentencing phase . . . .'") (quoting United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992) (collecting cases)). This was also the majority view among the other circuits. See United States v. Navarro, 169 F.3d 228, 236 (5th Cir. 1999) (holding that "there is no Confrontation Clause right at sentencing"); United States v. Francis, 39 F.3d 803, 810 (7th Cir. 1994) ("[E]ven with the dramatic changes in the sentencing process brought about by the Sentencing Guidelines, the pre-Guidelines policy of allowing sentencing courts to obtain all relevant sentencing information without the strictures of the right of confrontation remains intact . . . ."); United States v. Petty, 982 F.2d 1365, 1369-70 (9th Cir. 1993) (collecting cases); United States v. Silverman, 976 F.2d 1502, 1508-16 (6th Cir. 1992) (en banc); United States v. Wise, 976 F.2d 393, 401 (8th Cir. 1992) (en banc) (concluding that "the enactment of the Guidelines has not so transformed the sentencing phase that it constitutes a separate criminal proceeding. The right to confront witnesses, therefore, does not attach."); United States v. Kikumura, 918 F.2d 1084, 1102-03 & n.21 (3d Cir. 1990).

By its own terms, Crawford does not address whether the Sixth Amendment right to confront witnesses applies at sentencing. Crawford concerned "testimonial hearsay" that was introduced at

trial.  541 U.S. at 68.  In <u>Crawford</u>, the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred by the Confrontation Clause, unless witnesses are unavailable and the defendant had a prior opportunity to cross-examine them, regardless of whether such statements are deemed reliable by the court.  <u>Id.</u>  Nothing in <u>Crawford</u> requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing.

<u>Blakely</u> and <u>Booker</u> do not alter this analysis.  In <u>Blakely</u>, the Supreme Court held that the imposition of a sentencing enhancement -- based solely on the sentencing judge's factual findings -- above the range indicated in the State of Washington's Sentencing Reform Act, violated the defendant's Sixth Amendment rights, because the facts supporting the findings were neither admitted by the defendant nor found by a jury beyond a reasonable doubt.  <u>Blakely</u>, 124 S. Ct. at 2537.  Luciano argues that <u>Blakely</u> essentially transformed sentencing enhancements into separate criminal proceedings during which confrontation rights attach. However, nothing in <u>Blakely</u> suggests that this result was intended by the Supreme Court.  In addition, when the Supreme Court, in <u>Booker</u>, considered <u>Blakely</u> in the context of the federal Sentencing Guidelines, rather than rendering the Guidelines unconstitutional as some expected it would, or requiring that the Guidelines sentences be based on facts found by jury or admitted by the

-11-

defendant, the Supreme Court remedied the Sixth Amendment problem by holding that the U.S. Sentencing Guidelines are advisory. Booker 125 S. Ct. at 756-57. Therefore, Booker error "is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system." Antonakopoulos, 399 F.3d at 75. Thus, nothing in Blakely or Booker necessitates a change in the majority view that there is no Sixth Amendment right to confront witnesses during the sentencing phase. See United States v. Martínez, --- F.3d ---, No. 04-2075, 2005 WL 1492079, at *4 (2d Cir. Jun 24, 2005) (holding, post-Booker, that the Sixth Amendment rights of confrontation do not bar judicial consideration of hearsay testimony at sentencing proceedings.).

In the alternative, we note that even if Crawford did apply to sentencing hearings, the initial statement that Camacho made to Officer Thornton when Camacho flagged down the Officer's cruiser immediately following the assault does not constitute "testimonial hearsay" as used in Crawford. Instead, Camacho's statement appears to be an excited utterance that would qualify for admission at trial under as a hearsay exception.[3]  See Fed. R.

_____

[3]  While the Supreme Court left for another day "any effort to spell out a comprehensive definition of 'testimonial,' Crawford, 541 U.S. at 68, the Court noted that "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [] police interrogations" constitute testimonial hearsay. While

-12-

Evid. 803(2) ("Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

C. **Reliability and Sufficiency of the Evidence**

Finally, Luciano challenges the reliability and sufficiency of the evidence relied on by the sentencing court in applying U.S.S.G. § 2K2.1(b)(5). Section 2K2.1(b)(5) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Due to its finding that Luciano committed assault with a deadly weapon at the bus stop, the district court applied a four-level enhancement to Luciano's sentence. Luciano argues that the government failed to establish by a preponderance of the evidence that Luciano committed the assault, because the evidence presented at the sentencing hearing was hearsay and unreliable.

We review the district court's determination of reliability for an abuse of discretion. United States v. Figaro, 935 F.2d 4, 8 (1st Cir. 1991) ("'[T]he sentencing judge enjoys wide discretion in determining both the relevance and reliability of the sentencing information . . . .'") (quoting United States v.

the grand jury testimony and detective's report might constitute testimonial hearsay for purposes of Crawford, assuming arguendo that the Confrontation Clause applied at sentencing, the excited utterance of fourteen-year-old Camacho as he flagged down Officer Thornton immediately following the incident clearly does not fall within the meaning of testimonial hearsay as it is used Crawford.

-13-

Iguaran-Palmar, 926 F.2d 7, 10 (1st Cir. 1991)). "At sentencing, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" Tardiff, 969 F.2d at 1287 (quoting U.S.S.G. § 6A1.3(a)).

The standard of review for the district court's finding that Luciano had committed assault with a deadly weapon is clear error. "If a party assigns error to a factual finding made at sentencing, we review the finding for clear error. In doing so, we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence." United States v. Powell, 50 F.3d 94, 102-03 (1st Cir. 1995) (internal citation omitted). See also United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000) (reviewing the factual findings underlying the application of a sentencing enhancement for clear error).

As we have already noted, Camacho's statement appears to have all of the authenticity and reliability of an excited utterance that would qualify as a hearsay exception under Federal Rule of Evidence 803(2). The facts that Officer Thornton was able to quickly locate Luciano near the bus stop, identify him due to the orange clothing Camacho had described, and especially that

Officer Thornton recovered a gun from Luciano, corroborate Camacho's statement.

In addition, the girlfriend, Torres, confirmed that she and Luciano had been fighting just before the incident. Torres also admitted that she had seen Luciano with a gun in the past. Finally, although Torres denied that Luciano pointed the gun at her, the district court cited a logical reason for discounting her testimony on that point, beyond the fact that she was a biased witness: Torres likely would not have seen a gun pointed at the back of her own head.

We therefore find that the district court did not abuse its discretion in relying on Camacho's statements. See, e.g., United States v. Cash, 266 F.3d 42, 44 (1st Cir. 2001) (finding hearsay statements of defendant's cellmate sufficiently reliable for purposes of U.S.S.G. § 6A1.3(a) in light of corroborating information). Moreover, we find that Camacho's statements and the corroborating evidence provide sufficient basis for the district court's assault finding. Therefore, there is no clear error.

### III.

For the reasons set forth above, Luciano's sentence is **affirmed**.

-15-