*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

ANASTASIOS S. KATZOPOULOS,

> *Defendant-Appellant.*

No. 04-6501

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00121—William J. Haynes, Jr., District Judge.

Argued: November 30, 2005

Decided and Filed: February 15, 2006

Before: SILER and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Jeffrey A. Rothman, DANIELS & ROTHMAN, Athens, Georgia, for Appellant. Byron M. Jones, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Jeffrey A. Rothman, DANIELS & ROTHMAN, Athens, Georgia, for Appellant. Byron M. Jones, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

ARTHUR J. TARNOW, District Judge. Pursuant to a written plea agreement, Anastasios Katzopoulos pled guilty to ten counts of mail fraud and conspiracy to commit wire fraud for his involvement in an internet auction scheme. At the time of the plea agreement, the Federal Sentencing Guidelines constitutionality was in question as the Supreme Court had not decided *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The uncertain legal landscape caused the parties to enter into an agreement which required the district court to determine whether the Sentencing Guidelines were constitutional in light of *Blakely v. Washington*, 542 U.S. 596 (2004). If the district court found the Sentencing Guidelines to be unconstitutional, then

_____

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Katzopoulos would waive his right to have a jury determine the enhancements and allow the district court to determine whether the enhancements existed beyond a reasonable doubt.

At sentencing, the district court, over defense objections on grounds of both hearsay and a violation of his Sixth Amendment right to confrontation, admitted the hearsay testimony offered by the government's sole witness at the hearing, United States Postal Inspector Jill Gregg. Relying in part on her testimony, the district court found that two sentencing enhancements applied: (1) the value of loss to the victims exceeded $200,000; and (2) that the number of victims exceeded fifty.

Following the Sixth Circuit precedent at the time, the district court held the mandatory application of the Sentencing Guidelines to be constitutional and imposed a thirty-three month sentence with three years' supervised release under the mandatory Sentencing Guidelines regime. Alternatively, the district court made a factual finding that the sentence enhancements were proven by the government beyond a reasonable doubt and therefore imposed an identical, alternative sentence as if the Guidelines were unconstitutional.

Petitioner now challenges his sentence on direct appeal. Katzopolous contends that the district court erroneously enhanced his sentence by impermissibly relying on hearsay evidence in violation of his Sixth Amendment right to confrontation articulated in *Crawford v. Washington*, 541 U.S. 36 (2004). Katzopoulos also argues that the district court improperly enhanced his sentence in violation of his Sixth Amendment rights by relying on sentencing factors, not charged, admitted in open court or proven by the government beyond a reasonable doubt. For the reasons set forth below, we affirm Katzopoulos' sentence.

## I. Facts

In January 2002, Katzopoulos operated a business named the Surplus of Nashville which offered merchandise such as computers, cameras and electronic devices for sale through internet auction sites and booths at tradeshows. The ten named customers in the indictment were persons who were the highest bidders for particular merchandise. They were informed by Surplus of Nashville employees that their bids were accepted. The winning bidders would submit their payments to Appellant through one of three means, *i.e.,* internet based payment, personal checks or telephone credit card transactions. After their payments were received, the customers were informed that their merchandise would ship from a warehouse in Nashville in approximately four to six weeks. The winning bidders never received their merchandise or a refund.

Employees of Surplus of Nashville were unaware of Katzopoulos' scheme, though there were suspicions. Whenever questions arose, Katzopoulos provided answers that would assuage their concerns.

In February of 2002, postal authorities began investigating the Surplus of Nashville. In late March, a search warrant was executed at Katzopoulos' recently abandoned apartment. As a result of the search, over a hundred and fifty refund checks drawn from two separate bank accounts were seized. Three months later, Katzopoulos was indicted on five counts of mail fraud and five counts of wire fraud. The indictment alleged that the Defendant had collected payments totaling $273,030.60 from approximately one hundred and thirty-eight customers from his scheme to defraud.

## II. Procedural History

Pursuant to a plea agreement, on August 2, 2004, Katzopoulos entered a plea of guilty to all counts admitting to the facts alleged in the indictment. The plea agreement addressed the parties' concerns over the Supreme Court's anticipated decision in *Booker* by including this condition:

The defendant acknowledges that he is aware of the recent decision of the Supreme Court in *Blakely v. Washington*, 2004 WL 1402696 (June 24, 2004). The defendant further acknowledges he has discussed *Blakely* with his attorney. The defendant also acknowledges the possibility of the application of its holding to his case. The defendant and the United States agree to submit to the Court the question of whether the federal sentencing guidelines are unconstitutional for the same reasons expressed in the *Blakely* decision. If this Court finds that the federal sentencing guidelines are unconstitutional for the reasons expressed in the *Blakely* decision, the defendant waives his right to have a jury determine the total amount of the loss and total number of victims attributable to the fraudulent scheme alleged in the indictment and both the defendant and the United States agree that the amount of the loss and the number of victims shall be determined by the Court applying the standard of proof beyond a reasonable doubt.

At the sentencing hearing, the government intended to present the hearsay testimony of US Postal Inspector Jill Gregg to further establish the amount of loss. The defense objected to the testimony as inadmissible hearsay and on the ground that it violated Katzopoulos' Sixth Amendment right to confrontation. After acknowledging that the total amount of loss would be difficult for the Government to prove without the hearsay testimony, the district court ruled that the testimony was admissible under Federal Rule of Evidence 807, the residual exception to the hearsay rule.

Postal Inspector Gregg testified that Katzopoulos' company had two bank accounts, one of which had total deposits of $130,240.22 and the other $142,790.50. Katzopoulos presented no evidence that he was involved in any legitimate business. As a result, the Court found that all of the money deposited into the accounts were the result of Katzopoulos' illegal activity.

The district court addressed the plea agreement's *Booker* issue by ruling that the Sentencing Guidelines were constitutional as mandatorily applied, following the Sixth Circuit precedent of *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004)(*en banc*), which considered the question after *Blakely* but prior to *Booker*.[1]

Using the 2003 edition of the US Sentencing Guidelines, the district court determined that Katzopoulos' criminal history points totaled two and the base level offense was six. Relying on Katzopoulos' plea admissions and Postal Inspector Gregg's testimony, the district court found that the loss to the victims exceeded $200,000 but was not more than $400,000 to enhance the base level to twelve pursuant to USSG § 2B1.1(b)(1)(G). Relying on the same evidence, the base level was enhanced four more levels because the number of victims was over fifty but less than two hundred and fifty. A three level reduction was applied because of Katzopoulos' acceptance of responsibility, resulting in a level nineteen which listed the range between thirty-three and forty-one months. The district court sentenced Katzopoulos under the mandatory Guidelines scheme to thirty-three months, three years of supervised release, restitution in the amount of $88,264.90, and a special assessment of $1,000.

The district court ruled alternatively that if the Guidelines scheme were unconstitutional, the court would still find that the presentence report's enhancements were proven beyond a reasonable doubt:

---

[1] The Supreme Court later granted *certiorari* in the *Koch* case, vacated the judgment and remanded the case for further consideration in light of *Booker*. 125 S.Ct. 1944 (2005). Subsequent decisions of this Court have recognized that *Koch* was overruled by *Booker*. *See United States v. Oliver*, 397 F.3d 369, 379 (2005) and *United States v. Barnett*, 398 F.3d 516, 526 (2005).

> The facts establish to the satisfaction of this Court that he was operating a scheme to commit wire fraud and to defraud people of moneys [sic] that were sent to him. And the Court finds that beyond a reasonable doubt, both as to the facts of this case and both as to the amount that were withdrawn from the fruits of that.

and would impose an identical sentence:

> The alternative that the Court would impose in this case would be the same, 33 months.

A month after Katzopoulos filed his notice of appeal of sentence, the Supreme Court released its opinion in *Booker*. The opinion determined that the mandatory application of the Federal Sentencing Guidelines violated the defendant's Sixth Amendment rights, holding "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. The Supreme Court concluded that this constitutional holding required the invalidation of 18 U.S.C. §§ 3553(b)(1) and 3742(e), "mak[ing] the Guidelines effectively advisory." *Id.* at 757.

## III. Standards of Review

A defendant's claims that the district court violated his rights under the Confrontation Clause are reviewed *de novo*. *United States v. Johnson*, 430 F.3d 383, 393 (6th Cir. 2005).

Unless waived or forfeited, challenges to the application of the Sentencing Guidelines are a matter of *de novo* review. *United States v. McDaniel*, 398 F.3d 540, 547 (6th Cir. 2005). Defendant has preserved his right to bring his Sixth Amendment challenge to the Sentencing Guidelines, thus *de novo* review is appropriate. Erroneous application of the Guidelines in violation of the Sixth Amendment requires reversal unless the error is found to be harmless. *United States v. Davidson*, 409 F.3d 304 (6th Cir. 2005).

The Sixth Circuit applies a clear error standard of review to findings of fact made at sentencing. *United States v. Orlando*, 363 F.3d 596, 600 (6th Cir. 2004).

## IV. Confrontation Clause

Pursuant to the Supreme Court's 2004 ruling in *Crawford v. Washington*, Katzopoulos challenges the district court's admission of Postal Inspector Gregg's hearsay evidence at the sentencing hearing, which helped establish the sentencing enhancements, as a violation of his Sixth Amendment right to confrontation. 541 U.S. 36 (2004).

The Supreme Court case of *Ohio v. Roberts*, 448 U.S. 56 (1980), provided that hearsay can be admitted into evidence without violating the Confrontation Clause when the statement: (1) falls within a firmly-rooted exception to the hearsay rule, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *See also Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000). In 2004, the Supreme Court overruled nearly twenty-five years of *Ohio v. Roberts* precedent finding out-of-court statements which are testimonial in nature to be barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford*, 541 U.S. at 59. According to the Court, the Confrontation Clause's ultimate goal of ensuring reliability of evidence commands reliability in the criminal setting to be assessed in a particular manner, *i.e.*, "by testing in the crucible of cross-examination." *Id.* at 61.

The Sixth Amendment right discussed in *Crawford* concerned testimonial hearsay that was introduced at trial. An issue unaddressed by *Crawford* is whether the Sixth Amendment right to confront witnesses applies similarly at sentencing.

Unlike the Federal Rule of Evidence's express statement that the rules of evidence do not apply to sentencing hearings, the text of the Sixth Amendment lacks an express limiting clause. Fed. R. Evid. 1101(d)(3)("The rules... do not apply: sentencing...").

Despite this omission, the answer to this question was well settled pre-*Crawford*, testimonial hearsay was admissible at sentencing if it bore some minimum *indicia* of reliability. *See United States v. Silverman*, 976 F.2d 1502, 1510 (6th Cir. 1992)(*en banc*)("In short, confrontation rights do not apply in sentencing hearings as at a trial on the question of guilt or innocence."). In light of the dramatic shift in the legal landscape in which over twenty years of precedent has been reversed, Katzopoulos asks this Court to reexamine *Silverman* under a lens that reflects *Crawford*'s ruling and intent.

Similar to the text of the Sixth Amendment, the *Crawford* opinion fails to address whether its holding applies to the sentencing phase as well. This failure has not gone unnoticed by this and other Circuits that have all determined that *Crawford* does not affect the longstanding principle. "Because *Crawford* was concerned only with testimonial evidence introduced at trial, *Crawford* does not change our long-settled rule that the confrontation clause does not apply in sentencing proceedings." *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005)(agreeing with the First Circuit's opinion *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005), that nothing in *Crawford* concerned sentencing hearings)*; see Luciano*, 414 F.3d at 179 ("Nothing in *Crawford* requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing."); *see also United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005)("Neither *Crawford* nor *Booker*... addressed the applicability of the right of confrontation to the sentencing context or the admissibility of hearsay testimony at sentencing proceedings."); *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005)("The *Crawford* opinion does not state that its rule applies at sentencing; it does not refer to sentencing.").

In support of his position, Katzopoulos points to recent sea change in another area of Supreme Court Sixth Amendment jurisprudence. In both *Blakely* and *Booker,* the Supreme Court found the Sixth Amendment right to have all facts necessary to support a sentence exceeding the maximum sentence to be either admitted or found beyond a reasonable doubt by an impartial jury applies in the context of sentencing hearings. The Supreme Court in *Blakely* found the State of Washington's sentencing system which allowed sentencing enhancements above the range based solely on the sentencing judge's factual findings violated the defendant's Sixth Amendment rights, because the facts supporting the findings were neither admitted by the defendant nor found by a jury beyond a reasonable doubt. *Blakely*, 542 U.S. at 303-04. The *Booker* ruling applied the *Blakely* analysis to the Federal Sentencing Guidelines finding a Sixth Amendment violation. The remedy was to cause the Sentencing Guidelines to be advisory.

Katzopoulos argues that the Supreme Court's recent decision to apply different Sixth Amendment protections to defendants at sentencing should be logically extended so that a defendant's Sixth Amendment right to confrontation should also apply during sentencing. Similar to the defendants in *Booker* and *Blakely*, Katzopoulos argues that his sentence was unconstitutionally augmented at the sentencing phase only after he was deprived of his Sixth Amendment right to confrontation. The testimonial hearsay admitted at the sentencing hearing and not subjected to the crucible of cross-examination helped establish enhancements which allowed the judge to raise the Guidelines.

Courts have questioned the continuing validity of allowing testimonial hearsay at sentencing post-*Crawford* and post-*Booker*. The Eleventh Circuit noted, "[w]hile [the *Crawford* rule] may eventually be extended to the sentencing context, that has not happened yet." *Chau*, 426 F.3d at 1323. In ruling that *Crawford* did not apply at the sentencing in the particular case, a West Virginia District Court stated, "[f]or hotly contested issues, however, the truth-seeking function of the Confrontation Clause deserves attention at sentencing." *United States v. Gray*, 362 F.Supp.2d 714, 725 (2005). This Court has recently stated that "[i]t is an open question in this circuit whether our rule that 'confrontation rights do not apply in sentencing hearings...' applies after *Crawford*." *Stone*, 432 F.3d at 654 (quoting *Silverman*, 976 F.2d at 1510).

Though the cases may be a broad signal of the future, there is nothing specific in *Blakely, Booker* or *Crawford* that would cause this Court to reverse its long-settled rule of law that Confrontation Clause permits the admission of testimonial hearsay evidence at sentencing proceedings. Applying the rationale used in *United States v. Kirby*, 418 U.S. 621, 627-28 (2005), in finding that the *Crawford* rule did not apply to revocation or supervised release hearings, this Court recently reiterated its commitment to the *Silverman* precedent. *Stone*, 432 F.3d at 654. Following the path that all other Circuits which have considered this issue have followed, without a clear directive from the Supreme Court, this Court will continue to observe its precedent that testimonial hearsay does not affect a defendant's right to confrontation at sentencing. *See also Luciano*, 414 F.3d at 179 ("Thus, nothing in *Blakely* or *Booker* necessitates a change in the majority view that there is no Sixth Amendment right to confront witnesses during the sentencing phase."); *Martinez*, 413 F.3d at 243 (*Crawford* and *Booker* provide "no basis to question prior Supreme Court decisions that expressly approved the consideration of out-of-court statements at sentencing," nor did these cases "so undermine the rationale of Second Circuit precedent involving the consideration of hearsay testimony at sentencing that we may now overrule the decisions of earlier panels of this Court."); *United States v. Brown*, 430 F.3d 942, 943 (8th Cir. 2005) (following the Second Circuit's logic in *Martinez*, the Eighth Circuit wrote "we see nothing in *Booker* that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-*Booker*."); *United States v. Roche*, 415 F.3d 614, 619 (7th Cir. 2005)(finding the due process clause, not the confrontation clause, to apply at sentencing even post-*Crawford*). Thus, under current law, the sentence is valid.

## V. *Booker* Issue

If a district court erroneously applied the Federal Sentencing Guidelines as mandatory and an objection were lodged, *Booker* calls upon reviewing courts to apply the plain error test in determining whether resentencing is appropriate. *Booker*, 125 S.Ct. at 769; *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). The Sixth Circuit has concluded that district courts who applied the pre-*Booker* mandatory Sentencing Guidelines satisfy the first two prongs of the four-step, plain error test *Barnett*, 398 F.3d at 525-31.

Similar to the district court in *Barnett*, the district court here applied the binding precedent of this Court's decision in *Koch* at the time of sentencing, which affirmed the mandatory application of the Sentencing Guidelines post-*Blakely* but prior to *Booker*. *Koch*, 383 F.3d at 443. In violation of *Booker*, the district court applied the Guidelines as mandatory and issued a "sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict," based upon any other fact (other than a prior conviction) not "admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. Thus, Katzopolous has satisfied the first two prongs of the plain error test.

The third prong requires us to determine whether the plain error "affected the outcome of the district court proceedings," *i.e.*, whether there was prejudice to defendant. *Barnett*, 398 F.3d at 526. In cases where the mandatory Guidelines have been erroneously applied, the reviewing court shall

presume prejudice to defendants "given the distinct possibility that the district court would have imposed a lower sentence under the new post-*Booker* framework and the onerous burden he would face in attempting to establish that the sentencing court would have imposed such a sentence." *Id*. at 529. As a result, the district court's *Booker* error causes us to presume Katzopoulos has suffered prejudice.

However, the government may sufficiently rebut this presumption of prejudice with "[c]lear and specific evidence that the district court would have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Id*. In this case, the plea agreement entered into by Katzopoulos allowed the district court to sentence him under a non-mandatory Guidelines regime if the district court found the enhancements beyond a reasonable doubt. Although the district court applied the Guidelines as mandatory, the district court also imposed an identical, alternative sentence under a non-mandatory Sentencing Guidelines regime. All but one of the circuits[2] to address the issue are consistent with the Sixth Circuit, which recently ruled that such alternative sentences are just the type of clear and convincing evidence that is required to rebut the presumption of prejudice where *Booker* error is found.

> [T]his court has concluded that when a district court imposes alternative, identical sentences, one under a regime in which Guideline enhancements are not mandatory, the harmlessness of any *Booker* error is established.

*United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005); *see also United States v. Antonakopoulos*, 399 F.3d 68, 81 (1st Cir. 2005)(*dictum*); *United States v. Hill*, 411 F.3d 425 (3d Cir. 2005); *United States v. Gill*, 150 Fed. Appx. 205, 207 (4th Cir. 2005)("[B]ecause the district court imposed an alternative discretionary sentence pursuant to § 3553(a) that was identical to the guidelines sentence, the Sixth Amendment error was harmless."); *United States v. Saldana*, 427 F.3d 298, 314 (5th Cir. 2005) (*Booker* error found harmless where at the "sentencing hearing, the judge stated that, in the event that the *Booker* decision should hold the federal sentencing guidelines unconstitutional, the court would sentence him to the same amount of imprisonment and supervised release permitted under the substantive statutes."); *United States v. Paladino*, 401 F.3d 471, 482 (7th Cir. 2005) (*dictum*); *United States v. Thompson*, 408 F.3d 994, 997 (8th Cir. 2005)("Because the sentencing court made known that it would impose the same 420-month sentence after taking [the § 3553(a)] considerations into account, any error was harmless beyond a reasonable doubt."); *United States v. Serrano-Dominguez*, 406 F.3d 1221, 1223 (10th Cir. 2005)(*Booker* error found to be harmless since district court employed the sentencing methodology of *Booker* in imposing an identical, alternate sentence); *United States v. Robles*, 408 F.3d 1324, 1327-28 (11th Cir. 2005)(finding *Booker* error harmless because an alternative, identical sentence was imposed).

The final step of the plain error analysis is to determine whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Barnett*, 398 F.3d at 529. Because the district court imposed an alternative, identical sentence after finding the sentence enhancements to be proven beyond a reasonable doubt pursuant to the plea agreement, the district court's erroneous application of the mandatory Guidelines is harmless error that does not require resentencing.

---

[2]*Contra*, the Second Circuit has determined that a district court's imposition of identical, alternative sentencing is not harmless error stating that "such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines regime." *United States v. Fuller*, 426 F.3d 556, 561 (2d Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 118 (2d Cir. 2005)).

### VI. Enhancements Beyond a Reasonable Doubt

Pursuant to the plea agreement, if the district court decided that the Federal Sentencing Guidelines were unconstitutional, the district court was to apply the standard of proof beyond a reasonable doubt to determine whether the sentencing enhancements sought by the state were present; the amount of loss to the victims was greater than $200,000 but less than $400,000 and number of victims was greater than fifty but less than two hundred and fifty. The district court in fashioning its identical, alternative sentence found that both sentence enhancements were proven beyond a reasonable doubt.

Katzopoulos' argues that the district court in imposing the alternative sentence could not have found the enhancements beyond a reasonable doubt. Katzopoulos argues that the district court improperly enhanced his sentence by relying on sentencing factors not contained in the indictment, not admitted in open court, and not proven by the government beyond a reasonable doubt.

The standard of review for a district court's factual findings at sentencing is clear error. *Orlando*, 363 F.3d at 600. These facts are plainly alleged in the indictment, and admitted to in open court by Katzopoulos when he pled guilty. The indictment in relevant part states:

2.    The scheme to defraud and to obtain money by false pretenses, representations and promises, so devised and intended to devised by ANASTASIOUS S. KATZOPOULOS was in substance, as follows:

...

e.    ANASTASIOUS S. KATZOPOULOS collected payments totaling approximately $273,030.60 from approximately 138 customers and deposited those payments into bank accounts that he controlled.

The wire fraud counts, Counts Six through Ten, realleged and incorporated *inter alia* these sections. When entering his guilty plea, Katzopoulos admitted to the facts contained in the indictment.

The admissible hearsay testimony of Postal Inspector Gregg further supported the district court's factual finding that both enhancements were proven beyond a reasonable doubt. Postal Inspector Gregg testified that the total amount of deposits of two Surplus of Nashville bank accounts exceeded $273,030. As to the number of victims enhancement, Inspector Gregg testified that one hundred and fifty six (156) never mailed, refund checks were seized from Katzopoulos' abandoned apartment. Also, bank records introduced at the sentencing hearing established that checks and Paypal payments were deposited into Surplus of Nashville's bank accounts from more than fifty (50) individuals. Finally, there was no evidence presented that Katzopoulos was involved in any form of legitimate business activities.

The district court did not commit clear error when it found that the sentencing enhancements were proven beyond a reasonable doubt. The indictment, the admission in open court, and the admissible hearsay testimony at sentencing all support the district court's factual findings.

For these reasons, the sentence imposed by the district court is AFFIRMED.