NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0192n.06

Case No. 14-5607

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Mar 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| FRANK SNOWDEN, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

**Before: KEITH, MERRITT, and BOGGS, Circuit Judges.**

**MERRITT, Circuit Judge.** Following a domestic dispute, Defendant Frank Snowden shot at his girlfriend through a wall. He later pointed his gun at police when they arrived on the scene. He pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and the district court imposed a 97-month sentence based on a cross-reference for attempted second-degree murder under U.S.S.G. § 2A2.1(a)(2) and a six-level enhancement for assaulting an official victim under U.S.S.G. § 3A1.2(c)(1). On appeal, Snowden argues that he lacked the requisite intent for either attempted second-degree murder or assault. For the following reasons, we AFFIRM Snowden's sentence.

## I.    Factual and Procedural Background

In the early morning hours of January 1, 2013, police responded to a domestic disturbance call where several shots had reportedly been fired.  Angela Gilley, Snowden's live-in girlfriend, had advised dispatch that she had fled from the house and was hiding in a neighbor's garage.

Snowden was in the yard when the police arrived.  He pointed his gun directly at several of the responding officers, who retreated and set up a perimeter.  After a few minutes, Snowden reentered the house before returning to the yard while taping the gun to his hand.[1]  He proceeded to alternate between pointing the gun at the officers and under his chin, threatening to commit suicide.  After returning inside once more, Snowden removed the tape from his hand, placed the gun on the ground, and surrendered.

In a statement to police, Gilley reported that the incident began after she accused Snowden of stealing three hydrocodone pills and drinking seven beers.  A heated argument ensued, during which Snowden screamed at Gilley, knocked over a lamp, and punched their bedroom door.  Snowden then used the bedroom phone to call his mother to come get him and his 15-year-old son, who was sleeping upstairs. Meanwhile, Gilley had retreated into an adjacent bathroom.  While still inside, she heard five gunshots.  Although no bullets passed into the bathroom, police later discovered a tight pattern of five bullet holes in the wall separating the two rooms. They also found shell casings "within inches" of the wall.

Following the incident, police interviewed Gilley's son, who had been sleeping in an upstairs bedroom.  After being awakened by the commotion below, he heard Gilley crying and

---

[1] In a later statement to police, Snowden said he had taped the gun to his hand because he believed it would still discharge if he was shot—*i.e.*, he wanted to ensure that he was killed either by officers or by his own hand.

Snowden shout, "Where is the bitch at? I am going to kill her."[2]  A few seconds later, he heard gunshots and believed that Snowden had killed his mother.  At some point, he also heard Snowden say, "There are fixing to be some dead cops in my yard."

The next day, Snowden made a statement to police.  He largely confirmed Gilley's version of events, but claimed he never intended any harm by his actions.  He stated that he only grabbed the gun from the bedroom because he "might have intended to kill himself."  In an effort to explain firing the weapon, Snowden claimed he had been waving the gun around the bedroom when it accidentally discharged—and then continued to fire due to the recoil mechanism.  Regarding the events in the yard, Snowden claimed that he went outside to kill himself and only pointed the gun at the responding officers in an effort to make them back away from him.

Snowden pled guilty to one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g).  At the sentencing hearing, Snowden acceded to the facts in the PSR but objected to two Guidelines calculations included in it:  the application of the second-degree murder cross-reference under U.S.S.G. § 2A2.1(a)(2) and a six-level enhancement under § 3A1.2(c)(1) (because the offense included an "official victim").  The district court adopted these recommendations and imposed a 97-month sentence.  This timely appeal followed.

## II. Analysis

### A. *Attempted Second-Degree Murder Cross-Reference—U.S.S.G. § 2A2.1*

Snowden argues that the district court should not have applied a cross-reference for attempted murder—raising his Base Offense Level from 14 to 27—because there was insufficient evidence to find that he intended to kill Gilley.  Because a determination of criminal responsibility is a mixed question of fact and law, we review it *de novo*.  *See United States v.*

---

[2] Gilley's son changed this timeline slightly at the sentencing hearing, where he testified that he heard Snowden make this threatening statement *after* the shooting.

*Whited*, 473 F.3d 296, 297 (6th Cir. 2007). We review the facts employed by the district court to decide criminal responsibility for clear error. *See United States v. Katzopoulos*, 437 F.3d 569, 574 (6th Cir. 2006).

To establish attempted second-degree murder, the Government was required to demonstrate by a preponderance of the evidence that Snowden acted with "malice aforethought," *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994), and that he "committed an overt act that constitute[d] a 'substantial step' toward commission of the crime." *United States v. Wesley*, 417 F.3d 612, 618 (6th Cir. 2005). "Malice aforethought may be inferred when the defendant grossly deviates from the standard of care to such an extent that a jury could conclude that he must have been aware of a serious risk of death or serious bodily injury." *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (internal quotation marks omitted).

In this case, the Government showed by a preponderance of the evidence that Snowden intended to kill Gilley. After arguing with her, Snowden screamed, knocked things over, and punched a door. When Gilley retreated to the bathroom, Snowden retrieved a handgun in the adjacent bedroom. He fired five shots into the wall separating the two rooms, and around that same time yelled out, "Where's the bitch at? I'm going to kill her." Although testimony was inconsistent regarding whether Snowden made this statement before or after firing the gun, it is irrelevant *when* he made this threat—simply that he made the statement evidences his intent to inflict bodily harm. Additionally, the evidence demonstrated that Snowden must have fired the gun at close range: responding officers noted that the bullet holes were in a tight pattern and found shell casings inches from the wall. Finally, additional proof at sentencing established that the gunshot pattern was such that the gun could not have been discharged accidentally due to the recoil mechanism, as Snowden claims. This evidence discredits Snowden's version of events.

### B. *Assault on Official Victim Enhancement—U.S.S.G. § 3A1.2(c)(1)*

Snowden further contends that the district court erred in assessing a six-level enhancement under U.S.S.G. § 3A1.2(c)(1)[3] for assaulting the responding officers. This sub-section "applies in circumstances tantamount to aggravated assault . . . [and] its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a 'substantial risk of serious bodily injury.'" U.S.S.G. § 3A1.2 app. n.4(A).

Snowden mistakenly argues that he could not have committed aggravated assault upon the officers because he lacked the specific intent to cause bodily injury. Neither the text nor the commentary to § 3A1.2(c)(1) suggests an intent requirement—rather, this enhancement only requires that Snowden acted recklessly. *See United States v. Coleman*, 664 F.3d 1047, 1051 (6th Cir. 2012) (citing, inter alia, Tenn. Code Ann. § 39-11-302(c) ("[A] person . . . acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.")). Because Snowden pointed his firearm directly at several of the responding officers, there is no error.

## III. Conclusion

For the foregoing reasons, we AFFIRM Snowden's sentence.

---

[3] U.S.S.G. § 3A1.2(c)(1) provides for a six-level increase "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom."