**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-1238

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID W. LACOUTURE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Joshua R. Hanye on brief for appellant.
Eric S. Rosen, Assistant United States Attorney, and Carmen M. Ortiz, United States Attorney, on brief for appellee.

August 31, 2016

**THOMPSON**, **Circuit Judge**.  In violation of his probation and federal and state laws that required him to register as a sex offender, Defendant-appellant David W. Lacouture fled Massachusetts for Missouri, where he lived using a fake identity until he was accused of molesting a neighbor's child and arrested. The case before us concerns only Lacouture's sentence for the crime of failing to register as a sex offender, to which he pled guilty. At sentencing, the district court applied an eight-level enhancement on the basis of the Missouri charge, which Lacouture argues was error.  Because the record does not reveal whether the district court found reliable the out-of-court statement upon which the prosecution primarily relies, we remand this matter for clarification of whether the district court so found, and why.

## BACKGROUND[1]

### A. The Underlying Offense

In September 2010, Lacouture pled guilty in Barnstable Superior Court in Massachusetts to one count of indecent assault and battery on a minor.  For his crime, Lacouture received a two-and-a-half year sentence -- eighteen months of which was a term of

---

[1] Because Lacouture's conviction resulted from a guilty plea, we draw the facts from the plea agreement, the Presentence Investigation ("PSI") report, other documents in the sentencing record, and the transcript of the sentencing hearing. See United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013).

imprisonment and the remainder of which was to be served on probation.

On June 2, 2011, after completing the carceral portion of his sentence, Lacouture was released on probation, and was required by both federal and state law to register with the Massachusetts Sex Offender Registry Board ("SORB"). See 42 U.S.C. § 16913(b); Mass. Gen. Laws ch. 6, § 178F. Because Lacouture was homeless at the time of his release, he was required to verify his SORB registration by appearing in person at the local police department every 30 days, see Mass. Gen. Laws ch. 6, § 178F1/2, and, as is required of all sex offenders, to notify SORB of any changes in address, see 42 U.S.C. § 16913(c); Mass. Gen. Laws ch. 6 § 178H(a).

**B. Unlawful Wayfaring**

Alas, at some point after June 17, 2011, Lacouture left Massachusetts without letting anyone know. At first, the state court issued a warrant for Lacouture for violation of his probation requirements. Then, when thirty days passed and Lacouture did not resurface, the court issued a second warrant, this time with a new charge for failure to register as a sex offender.

While his disappearance was being investigated, Lacouture managed to wind up far away in Joplin, Missouri. There, he found some work, took up the alias "Damon Hunter" and nickname "Rhino," and lived for a time as a fugitive under that assumed

- 3 -

identity.  This new life was abruptly interrupted on April 2, 2013, when Lacouture was arrested for child molestation.

Some weeks prior to Lacouture's arrest, Lacouture's eight-year-old neighbor had been found masturbating by her aunt. When the aunt asked the girl about it, the girl told her aunt that "Rhino" had touched her inappropriately and done to her "other things we are not supposed to do."  The aunt told the girl's mother, and the mother alerted the Joplin police on March 16, 2013.

A Sexual Abuse Investigative Interview ("SAIN") was conducted a few days later.[2]  When asked about the incident, the child recounted that, sometime before Thanksgiving but after the start of the school year in 2012 (when she was seven years old), she had gone over to Lacouture's house alone to pet his cat, and Lacouture had put his hands down her pants and touched the area around her vagina, which had made her feel uncomfortable.  She also told the interviewer that she had run home immediately afterward and informed her mother.  A medical exam detected no physical evidence of the alleged 2012 abuse.

The arrest followed shortly thereafter.  During post-arrest questioning, Lacouture recalled he had picked the child up off the ground, and in doing so, had put his arm under her crotch

---

[2] The interview appears to have been conducted at the Joplin Police Department by a Missouri Sexual Assault Investigative Network interviewer.  The interview was video-recorded, but the sentencing record contains only a transcript of the interview.

area, but denied ever having touched the girl sexually.  (The case related to this arrest, by the way, remains pending in Missouri at the time of this opinion's publishing.)  Lacouture also admitted that "Damon Hunter" and "Rhino" were aliases, and that he had been living in Joplin unlawfully and in violation of his sex offender registration requirements.

**C. The Case at Hand**

This brings us to our present case.  Lacouture was transported back to Massachusetts and eventually indicted in federal court for one count of failure to register as a sex offender, to which he pled guilty.

A PSI report was prepared.  Because Lacouture's underlying state conviction qualified him as a Tier II sex offender, the PSI report assigned a base offense level of fourteen. See U.S.S.G. § 2A3.5(a)(2).  To this, the PSI report added the eight-level enhancement for commission of a sex offense against a minor while in failure-to-register status, on the basis of the evidence that Lacouture had molested his neighbor's child in Joplin.  See id. § 2A3.5(b)(1)(C).  The PSI report then subtracted three levels for acceptance of responsibility, resulting in a total offense level of nineteen.  Based on Lacouture's criminal history category of VI, this put the guideline range at 63 to 78 months.

Lacouture objected, among other things, to the PSI report's recommendation that the district court apply an eight-

level enhancement on the basis of the unproven Joplin allegations, which he claimed were false. The district court disagreed, finding that the eight-level enhancement applied, and adopted the PSI report's guideline range. The judge sentenced Lacouture to the highest guideline sentence: 78 months (or 6 years and 6 months) of imprisonment. Lacouture timely appealed.

**DISCUSSION**

Lacouture's sole argument on appeal is that the district court erred in applying the eight-level enhancement in its guideline calculation because the court lacked sufficient evidence to find that he had committed a sex offense against a minor. A district court's error in calculating the guideline range requires resentencing where it "affects or arguably affects the sentence imposed." United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007).

We review a district court's sentencing factor findings for clear error. United States v. Morgan, 384 F.3d 1, 5 (1st Cir. 2004).[3] "It is the government's burden at sentencing to prove

---

[3] Lacouture argues that his appeal involves only pure legal questions and thus asks us to apply de novo review, but his challenge goes to the district court's factual finding that Lacouture committed a sex offense while on failure-to-register status, and therefore the clear error standard applies. See United States v. Savarese, 686 F.3d 1, 15 (1st Cir. 2012) ("[W]here, as here, a defendant challenges the factual predicate supporting the court's application of a sentencing enhancement, 'we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence.'"

- 6 -

sentencing enhancement factors by a preponderance of the evidence, and a district court may base its determinations on 'any evidence that it reasonably finds to be reliable.'"  United States v. Almeida, 748 F.3d 41, 53 (1st Cir. 2014) (quoting United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011)).

The government urges us to find that it met its burden here because the SAIN transcript, in which the child herself gave an account of the incident, gave the sentencing judge an adequate basis to find that Lacouture had molested the child.  The government argues that the child's accusations are consistent with two prior convictions in Lacouture's criminal history (for indecent assault and battery and for indecent exposure), which both involved children under the age of fourteen.[4]  To the extent that further corroboration of the child's account was necessary, the government continues, it was supported by police reports containing both the mother's original statements to the police -- that the aunt had discovered the child masturbating and that the child had told her aunt, "Rhino used to do it to me as well as

_____

(quoting United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005))).

[4] Although propensity evidence is normally inadmissible in criminal trials, it is admissible in cases involving child molestation, see Fed. R. Evid. 414 ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."), and, in any case, the government offers the convictions here for purposes of sentencing.

- 7 -

other things we are not supposed to do" -- and Lacouture's own statements during police questioning that he recalled picking the child up off the ground and placing his arm under her crotch area.

But here is where we are stuck. Some of the very police reports that the government claims are corroborative appear at times to undermine, rather than verify, the child's account. And the district court left unaddressed the question of whether, in light of these discrepancies, the child's interview statements are sufficiently reliable to support the conclusion that the alleged molestation occurred. We explain.

First, during the SAIN, the child told the interviewer that immediately following the incident, she had gone home and told her mother what had happened, and that her mother had told her "never to go back over to his house again." But according to the initial police report, the mother told the police that she learned of the incident from the child's aunt, which was not until March 2013.

Additionally, when the interviewer asked the child how many different times Lacouture had inappropriately touched her, the girl responded that it had happened only "[o]nce," and when the interviewer asked whether he had ever touched "any other places on [her] body," she answered, "Nope." But, conflictingly, in the statement the child allegedly made to her aunt -- "Rhino used to do it to me as well as other things we are not supposed to do" --

she seems to have suggested both that there was more than one instance of molestation, and that there may have been more than one kind of inappropriate act.

Furthermore, when the interviewer asked the child whether "anybody else" had ever "touched . . . any places on [her] body" that they "weren't supposed to touch," the child answered, "No." But during a post-SAIN interview, the child's mother told the police that the child had been molested previously by a grandfather.

Finally, several months before the SAIN, the mother reported to the police that the child had told her she had been "touched" by someone across the street, but withdrew the accusations when the child then "told [the mother] that she [had] lied about being touched." The child's mother told the police during her post-SAIN interview that, while she thought the child was likely telling the truth about this incident now, she "was not sure" whether she was lying again.[5]

---

[5] Lacouture maintains that the present incident, of which he stands accused, and this prior incident of sexual assault, about which the girl admitted she lied, are, in fact, one and the same, as both allegedly occurred "several months" before March 2013 and involved a "neighbor." The government agrees that this is a "plausible inference," but argues that, if anything, this shows the child was consistent in her story, even if she retracted her first report of it, perhaps out of embarrassment or fear. For reasons we explain in a moment, we leave it for the district court to weigh these competing inferences.

We do not assert that the dissonance between the SAIN transcript and the police reports requires that the child's account be disbelieved.  But we do conclude that we ought go no further in our review because we cannot tell from the sentencing judge's conclusory finding whether he found the child's SAIN statement reliable, hence admissible, and why.  In ruling on this issue, the judge stated simply: "[T]he Court does believe, under the reduced standard by which it is to determine sentencing factors, a preponderance of the evidence[,] . . . that, while this Defendant was on failure-to-register status, he committed a sex offense[.]"  "[I]n other words," the judge went on, "the conduct is sufficient on the evidence . . . that the Defendant was in commission of conduct that was in violation of a . . . sex-conduct statute, and therefore . . . the eight-level increase is warranted."  It is not clear from this sparse discussion whether the sentencing judge found the child's interview statements to be reliable, and if so, how he came to his conclusion despite the apparent inconsistencies.  As a result, we cannot tell whether the judge clearly erred in finding that the sentencing enhancement applied on the basis of the evidence.[6]

---

[6] We are mindful that recounting a sex crime can be a traumatic experience that may make telling a linear story difficult, and that this hardship is compounded when the victim is a child.  Nonetheless, a sentencing enhancement cannot be applied unless the government meets its burden to prove the predicate fact or facts by a preponderance of the evidence.

The stakes of a potentially erroneously calculated guideline range in this case are clear. The district court imposed a top-of-the-range sentence of 78 months (6 years and 6 months). Without the enhancement, the range would have been 30 to 37 months, resulting in a guideline ceiling of 3 years and 1 month -- less than half the sentence Lacouture ultimately received.[7]

Given the impact that a possible error would have had on the sentence and the need for further clarification before we can determine whether an error occurred, see United States v. Jimenez-Martinez, 83 F.3d 488, 494 (1st Cir. 1996) (expressing "concern[]" over "the court's failure to articulate any reason why [a questionable] affidavit was reliable," and finding the court erred in relying on it without an evidentiary hearing), we think the wisest course here is to follow our occasional practice of remanding the matter to the district court, as we have previously done in cases where a district court's explanation of a sentence is inadequate, see United States v. Lucena-Rivera, 750 F.3d 43, 53 (1st Cir. 2014) (remanding with instructions to revisit the

---

[7] This would-be guideline range is based on a base offense level of fourteen, minus two levels for acceptance of responsibility, resulting in a total offense level of twelve. (Only two levels are subtracted for acceptance of responsibility because, without the eight-level enhancement, Lacouture would not have qualified for the additional one-level decrease for timely notice of his intent to plead guilty, which the PSI report recommended and the district court adopted, because that decrease only applies where the offense level is sixteen or greater. See U.S.S.G. § 3E1.1(b).)

application of a sentencing enhancement, as "is appropriate when the basis in the sentencing record for the application of an enhancement requires clarification").

On remand, the district court should indicate whether it found the child's statement to be reliable and how it reached that conclusion.[8]

## CONCLUSION

Because we are unable to determine whether the district court erred in applying the eight-level sentencing enhancement, we vacate the sentence and remand for further proceedings consistent with this opinion.

---

[8] To this end, the district court may wish to request that the government produce the video recording of the SAIN in order to aid its assessment of the child's responses.