**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

HORACE LITTLESUN,
            *Defendant-Appellant.*

No. 04-30300

D.C. No.
CR-03-00080-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
September 12, 2005—Seattle, Washington

Filed April 21, 2006

Before: James R. Browning, Arthur L. Alarcón, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Kleinfeld

4551

## COUNSEL

Larry Jent, Williams & Jent, PLLP, Bozeman, Montana, for appellant Horace Littlesun.

Marcia Hurd, Assistant U.S. Attorney, District of Montana, for appellee United States of America.

## OPINION

KLEINFELD, Circuit Judge:

We publish this opinion to resolve whether, after *Crawford v. Washington*, it is appropriate to use hearsay testimony during sentencing. We join each of our sister circuits who have considered the issue in concluding that it is.

## FACTS

Horace Littlesun, his wife, and numerous others conspired to sell and sold methamphetamine on the Northern Cheyenne Indian Reservation in Montana. Their inventory came from several out-of-state individuals the reservation residents called "the Mexicans."

Littlesun pled guilty to selling 3.7 grams of methamphetamine to an undercover informant,[1] but the sentencing judge held him accountable for 32.5 grams. The approximate one ounce difference generated a guideline adjustment that lengthened Littlesun's sentence. Littlesun's wife had told a Bureau of Indian Affairs agent that her husband had sold the additional ounce, but she did not testify at Littlesun's sentencing hearing. The BIA agent who interviewed her testified to what she had told him. The sentencing judge believed the agent and imposed the quantity adjustment accordingly. Littlesun was also denied a downward adjustment for minor or minimal role in the conspiracy, partly on the basis of what his wife had told the agent.

The sentencing judge considered the defense's confronta-

---

[1]Conspiracy to distribute methamphetamine within 1,000 feet of the Northern Cheyenne federal housing project in violation of 21 U.S.C. §§ 841(a)(1), 860, & 846, and distributing less than 50 grams of methamphetamine within 1,000 feet of the Northern Cheyenne federal housing project.

tion clause objection to the BIA agent's testimony and overruled it, concluding that all that he needed was "some particularized guarantee of trustworthiness" rather than confrontation and cross-examination of Littlesun's wife. The agent testified that the wife had told him that "the Mexicans" had fronted an ounce to her husband in February 2003 for a price of $1,500.[2] She and her husband were selling grams for $100 and smaller "bindles" for $25. Her husband also collected debts for "the Mexicans," wired money to them, and permitted them to stay at his house on their trips to the reservation.

When the investigation broke open, Littlesun's wife talked to the investigators but he did not. She refused to disclose who her customers were, but said that her husband used a gram of methamphetamine himself every few days, which would offer an alternative path for the disappearance of the ounce he was fronted.

Littlesun testified that one of the Mexicans was "making a move" on his wife, and "[t]hey must have fell in love or something," so he moved out to his sister's and was staying with her in Busby, Montana, during the first three months of 2003. During that period he was "stepping out" on his wife with another woman, and she was angry at him for it. But he had moved back home a couple of days before the March sale of 3.7 grams to the undercover agent, though they were "still having [their] feud." (This was not their first tiff — the presentence report says that the wife had stabbed him several years before.) He denied selling the ounce, denied it was fronted to him, and denied collecting debts for "the Mexicans." He testified that he only sold the 4 grams when the informant came to his house and asked for his wife, and the wife and informant told him to go to the neighbor's at the end of the cul-de-sac and bring back the drugs for her deal.

---

[2]To front drugs is to advance the inventory to a dealer on credit.

On cross-examination, Littlesun admitted that he wired $711 to someone in Utah on December 14, 2002, and $921 to one of his co-defendants on January 5, 2003. He knew at the time that the money was drug trafficking proceeds and that there was a drug conspiracy going on, but said his wife "had her own thing going."

The district judge was hearing this case after *Blakey*[3] and before *Booker*,[4] so he applied a "beyond a reasonable doubt" standard at sentencing. The judge did not impose an upward adjustment to Littlesun's guideline calculation for wiring the money, but considered the money transfers in determining whether Littlesun was telling the truth about the ounce. He found beyond a reasonable doubt that Littlesun knew about the conspiracy, though he did not adjust the sentence to reflect the 210 gram amount charged to the conspiracy in Count I of the indictment. Despite Littlesun's denial, the sentencing judge found beyond a reasonable doubt that the ounce was fronted to Littlesun and that he sold it. The sentencing judge disbelieved Littlesun because he denied personal involvement with the conspiracy even while "the Mexicans" lived in his house and he wired money to them. So he accepted the wife's out-of-court statement to the BIA agent. As a result, Littlesun got 33 months to serve even though he had no significant criminal history. His wife got only 18 months.

## ANALYSIS

### A. Hearsay at Sentencing

[1] The Supreme Court held in *Williams v. New York*[5] that admission of hearsay evidence at sentencing did not violate the due process clause. In that case, a jury had recommended life imprisonment for a murderer but the judge imposed a

---

[3]*Blakely v. Washington*, 542 U.S. 961 (2004).

[4]*United States v. Booker*, 543 U.S. 220 (2005).

[5]*Williams v. New York*, 337 U.S. 241, 246 (1949).

death sentence because the presentence investigation revealed additional aggravating evidence that the jury had not heard. The Court explained that,

> both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.[6]

This may include affidavits and, in smaller communities, the judge's own knowledge. When *Williams* was decided in 1949, presentence reports had just begun to be considered, the Court noted, to implement "a prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime," so that the death sentence was no longer "an automatic and commonplace result of convictions."[7] Individualization of sentences made it especially necessary to review a broad range of sentencing information that was not appropriately submitted to juries considering guilt.

[2] Congress has since provided by statute that the hearsay rule and other evidentiary limitations do not apply to sentencing:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.[8]

---

[6]*Id.* at 246.

[7]*Id.* at 247.

[8]18 U.S.C. § 3661.

We require only that the testimony "be accompanied by some minimal indicia of reliability."[9] In this case, that criterion is plainly satisfied by the judge's personal observation of the defendant's demeanor during his testimony, the wire transfers and their significance, and testimonial inconsistencies noted by the sentencing judge.

[3] Littlesun argues that these longstanding principles have been implicitly overruled and that the Supreme Court's decision in *Crawford v. Washington*[10] requires that the Confrontation Clause be interpreted to exclude hearsay at sentencing. But *Crawford* does not expressly speak to sentencing. It holds that, with the possible exception of dying declarations, the Confrontation Clause demands two things for admissibility of testimonial hearsay *at trial*: unavailability of the witness and prior opportunity for cross-examination.[11] *Crawford* speaks to trial testimony, not sentencing.

Littlesun's argument nevertheless has some force. Though the meaning of "testimonial" in *Crawford* is not entirely clear, there can be no question that Littlesun's wife's testimony is testimonial if *Crawford* applies to sentencing. And the record is clear that Littlesun never had an opportunity to cross-examine his wife about what she said. Cross examination might have been productive, because her participation in the methamphetamine conspiracy and her own interest in lenience, her boyfriend among "the Mexicans," his girlfriend, and the prior occasion when she stabbed Littlesun all might have given rise to an inference that she was not telling the truth when she cast the blame on her husband for the additional ounce.

---

[9]*United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001) (internal quotations omitted).

[10]*Crawford v. Washington*, 541 U.S. 36 (2004).

[11]*Id*. at 63-64, 68-69 (overruling the "particularized guarantees of trustworthiness" test in *Ohio v. Roberts* to the extent it is inconsistent with *Crawford*).

**[4]** But it is not for us to overrule the Supreme Court's decision in *Williams*. Under *Agostini v. Felton*,[12] we are bound to apply controlling Supreme Court precedent until it is explicitly overruled by that Court.[13] And *Crawford* does not explicitly overrule *Williams*. Thus the law on hearsay at sentencing is still what it was before *Crawford*: hearsay is admissible at sentencing, so long as it is "accompanied by some minimal indicia of reliability."[14]

**[5]** The same conclusion has been reached by the First, Second, Sixth, Seventh, Eighth, and Eleventh Circuits,[15] and none of our sister circuits have reached a contrary conclusion. And we have previously held that "[f]ederal law is clear that a judge may consider hearsay information in sentencing a defendant."[16]

**[6]** Littlesun counters with our decisions in *United States v. Comito*[17] and *United States v. Martin*,[18] but those cases involved revocation of parole and supervised release, not sentencing. Those decisions were grounded in the Supreme

---

[12]*Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal citation omitted)).

[13]*United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005).

[14]*United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001) (internal quotations omitted).

[15]*See, e.g., United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005); *see also United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005); *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005); *United States v. Brown*, 430 F.3d 942, 944 (8th Cir. 2005); *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005).

[16]*United States v. Fernandez-Vidana*, 857 F.2d 673, 675 (9th Cir. 1988).

[17]*United States v. Comito*, 177 F.3d 1166, 1172 (9th Cir. 1999).

[18]*United States v. Martin*, 984 F.2d 308 (9th Cir. 1993).

Court's decision in *Morrissey v. Brewer*[19] which expressly held that a parolee is entitled to cross-examine witnesses at a revocation proceeding,[20] subject to balancing certain factors. That requirement has since been codified in the Federal Rules of Criminal Procedure,[21] but neither *Morrissey* nor the Federal Rules of Criminal Procedure say anything about *Williams* or the right to examine adverse witnesses at sentencing. A court is presented with quite a different set of circumstances when it has to decide *whether* someone is guilty and must go to prison than when it is deciding *how long* a convicted criminal must serve. We rejected an attempt to graft *Crawford*'s Sixth Amendment rule onto *Morrissey*'s Due Process requirement at revocation proceedings in our recent decision in *United States v. Hall*.[22] *United States v. Corral*[23] holds that reversal is necessary where the sentencing judge relies on what was concededly unreliable hearsay.[24] It does not hold that accomplice hearsay is unreliable even where there are sufficient indicia of reliability. The government conceded on appeal in *Corral* that the hearsay was unreliable, but had not done so at sentencing.[25] *Corral* expressly recognizes that hearsay is admissible at sentencing.[26] The reliability of Littlesun's wife's hearsay might have become doubtful because she was an accomplice with a penal interest and had demonstrated her hostility to her husband, but the wire transfers and inconsis-

---

[19]*Morrissey v. Brewer*, 408 U.S. 471 (1972).

[20]*Id*. at 488-89.

[21]*See* Fed. R. Crim. Proc. 32.1(b)(2)(C).

[22]*United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005).

[23]*United States v. Corral*, 172 F.3d 714 (9th Cir. 1999).

[24]*See id*. at 715.

[25]*See id*. (Explaining that the government conceded that the hearsay in that case "was not reliable enough to be used.").

[26]*See id*. at 716 (Explaining that the sentencing "judge was correct that hearsay is admissible in sentencing . . . .").

tencies the district court noted were significant indicia corroborating Littlesun's role.[27]

## B. Minor or Minimal Participant

**[7]** Littlesun also challenges the district court's denial of a downward adjustment because he was a minimal or minor participant in the conspiracy.[28] Much of his argument is that the conspiracy sold a lot more methamphetamine than he participated in, but the judge took this into account in attributing to Littlesun only 32.5 grams, not the 210 grams the indictment charged. The district judge relied on Littlesun's wife's statement, as well other material in the presetence report to conclude that he had "a smaller role than some others in the conspiracy, but it was by no means small enough" for a role adjustment. We review denial of a role adjustment for clear error,[29] and there was none because the court accepted the evidence of Littlesun's wife's statement.

**[8]** The district court's determination that hearsay was admissible at sentencing and its guideline calculation were each correct. However, we grant a limited remand to allow the district court to answer the question whether it would have imposed a different sentence had it viewed the Guidelines as advisory.[30]

### AFFIRMED in part and REMANDED.

---

[27]Littlesun also relies on *United States v. Mezas de Jesus*, 217 F.3d 638 (9th Cir. 2000), but it does not hold that hearsay or accomplice testimony are inadmissible at sentencing. Rather, it holds that the clear and convincing standard of proof should have been applied where an uncharged offense had an extremely disproportionate effect on the sentence relative to the offense of conviction. *See id.* at 642-43.

[28]U.S.S.G. § 3B1.2.

[29]*See United States v. Pena-Gutierrez*, 222 F.3d 1080, 1091 (9th Cir. 2000) (Explaining that a "district court's determination that the defendant was not a minor participant in the offense is a factual determination that we review for clear error.").

[30]*United States v. Ameline*, 409 F.3d 1073, 1079 (9th Cir. 2005) (en banc).