148 P.3d 778 (2006)
Charles Anthony SUMMERS, Appellant,
v.
The STATE of Nevada, Respondent.
No. 45683.
Supreme Court of Nevada.
December 28, 2006.
*779 David M. Schieck, Special Public Defender, and Lee Elizabeth McMahon, Deputy Special Public Defender, Clark County, for Appellant.
George Chanos, Attorney General, Carson City; David J. Roger, District Attorney, and James Tufteland and Steven S. Owens, Chief Deputy District Attorneys, Clark County, for Respondent.
Before the Court En Banc.

OPINION
HARDESTY, J.
We primarily consider in this appeal whether the Confrontation Clause of the Sixth Amendment to the United States Constitution and the United States Supreme Court's holding in Crawford v. Washington[1] apply to evidence admitted during a capital penalty hearing. We conclude that they do not apply. We conclude that this issue, along with the others appellant Charles Summers raises on appeal, does not warrant reversal of his conviction and sentence. Therefore, we affirm.

FACTS
Guilt phase
Summers was an illegal drug dealer. Sometime in 2003, he entered into an informal agreement with Frederick Ameen, an addict who owed him money. Summers agreed to provide Ameen with drugs to sell, primarily "crack" cocaine, and to pay for a motel room from which he could sell the drugs; Ameen was to give Summers the profits from the sales.
On the night of December 28 and early morning of December 29, 2003, Ameen and his associate Albert Paige were in a room at the La Palm Motel in Las Vegas that Summers had rented for Ameen to sell illegal drugs in accordance with their agreement. Summers warned Ameen that only certain people were to be allowed in the motel room. That night, Ameen and Paige were in the room smoking crack cocaine with three other people, one of whom was Donna Thomas, a prostitute and friend of Ameen. When Summers later arrived accompanied by Andrew Bowman, he was upset about the number of people in the room. Ameen told everyone to leave; Paige and Thomas stayed behind.
Bowman briefly left the motel room, but he soon returned and handed Summers a .38 caliber handgun.[2] Summers stood in front of Ameen and Thomas, who were sitting on a bed. Paige was sitting at a small table, and *780 Bowman stood by the door. Summers put on a small glove and resituated the handgun, which was in the pouch of his sweater. Summers told Paige that if he wanted to kill him that he would have, but that Paige was playing him "for some type of fool."
Summers pulled out the handgun, pointed it at Thomas, and asked Ameen who she was. Ameen explained to Summers that Thomas was a friend, that he had told Thomas about Summers, and that he had instructed her to let Summers enter the motel room. Summers asked Thomas if she knew who he was. Thomas replied in the negative. Ameen reminded Thomas that he had previously told her about Summers. Thomas began to speak when Summers shot her.
Summers then pointed the handgun directly at Paige and pulled the trigger. But the handgun misfired. Summers then pointed the handgun at Ameen, but Ameen did not see Summers pull the trigger. Summers and Bowman then left the room. Thomas later died from the gunshot wound.
Summers was arrested for the incident and charged with several crimes. The State filed a notice of intent to seek a death sentence. The guilt phase of Summers's jury trial began on March 28, 2005. Summers contended in his defense that it was Ameen who shot Thomas, not him. To support this theory, Summers called a former gang member incarcerated at the Lovelock Correctional Center, Terrence Lee Collins, who testified that he had previously purchased crack cocaine from Summers and that Ameen once confessed to him that he shot Thomas. He also testified that Ameen and Paige had devised a theory to blame Thomas's murder on Summers. Summers also presented evidence that an anonymous tip to the police blamed Thomas's murder on another man and identified Ameen as an accomplice to the crime.
After a four-day trial, the jury found Summers guilty of the first-degree murder of Thomas with the use of a deadly weapon, the attempted murder of Paige with the use of a deadly weapon, and of assaulting Ameen with the use of a deadly weapon.
Penalty hearing
Prior to the penalty hearing, Summers moved to bifurcate the hearing into eligibility and selection phases. The district court denied the motion without explanation.
During the one-day penalty hearing, the State first presented victim-impact evidence from Thomas's sister and father. They testified that Thomas was the mother of three children, two girls and a boy, and had worked hard to support them before she moved to Las Vegas and "got caught up in life."
The State then presented numerous witnesses who testified about Summers's juvenile and adult criminal history while both in and out of custody, as well as exhibits containing approximately 835 pages of documents regarding that history. These documents included: Las Vegas Metropolitan Police Department (LVMPD) records and arrest reports; a 1996 judgment of conviction for robbery and possession of a stolen vehicle; juvenile and family court records; LVMPD gang unit investigation cards; and Clark County Detention Center and Nevada Department of Correction (NDOC) records, which included inmate disciplinary reports.
LVMPD Officer Patrick Rooney testified that Summers was arrested as a juvenile in 1992 for hitting a woman in the head with a bottle. LVMPD Detective Patrick Paorns testified that Summers was also arrested that year for his participation in a carjacking with the use of a deadly weapon. LVMPD Officer Brian Morse testified that Summers was arrested three years later in 1995 as a juvenile for robberystealing a woman's purseand possession of a stolen vehicle. LVMPD Officer Timothy Schoening testified that Summers was also arrested that year for beating a man with a bottle. LVMPD Officer Clayton Shanor testified about Summers's disciplinary problems while incarcerated, including fighting and verbal outbursts.
LVMPD Officer Andrew Pennucci testified that he stopped Summers in 2003 for jaywalking. During the stop, Summers turned away from Officer Pennucci and reached beneath his jacket into his waistband. Officer Pennucci testified that he ordered Summers *781 to stop, but Summers did not comply. Officer Pennucci drew his handgun, pointed it at Summers, and ordered Summers to take his hand from his waistband. Summers complied and said, "Okay. Okay. I have a gun." Officer Pennucci seized a loaded .22 caliber semiautomatic handgun with a bullet in the chamber from Summers. Summers was arrested for the incident.
Summers's former juvenile probation officer, Gregory Stanphill, testified that Summers was a very sophisticated juvenile. And LVMPD Officer Thomas Bateson testified about Summers's gang affiliations. Several other witnesses, including the Warden of Camps for the NDOC, testified that Summers was a discipline problem while he was in custody.
Summers called several family members to testify on his behalf: his uncle, nephew, second cousin, grandmother, and sister. They testified that Summers was the youngest of three children, his mother and father drank alcohol and used illegal drugs, and his father sometimes beat his mother. Summers's mother and father had since died. Summers had an impoverished childhood, sometimes not having enough food to eat and going to school in dirty clothes. The members of his family also testified about their love for Summers, his belief in God, and how they would write to him while he was in prison. Summers had asked to be removed from the courtroom prior to the start of the hearing and, therefore, did not make a statement in allocution.
The State finally called NDOC Officer Jeffery Moses, who had arrived at the hearing late because of a delayed airline flight. Officer Moses testified that he found a six-inch-long weapon in Summers's prison cell in 1997 and that Summers took responsibility for having it.
The jury found four circumstances aggravated the murder. Three of the aggravators were found pursuant to NRS 200.033(2) that the murder was committed by a person who had been convicted of a felony involving the use or threat of violence. These three aggravators were based on Summers's 1996 conviction for robbery and instant convictions for assault with the use of a deadly weapon and attempted murder with the use of a deadly weapon. The other aggravator was found pursuant to NRS 200.033(3)that the murder was committed by a person who knowingly created a great risk of death to more than one person.
The jury found six mitigating circumstances: the absence of parental guidance; impoverished living conditions and environment; pressured into gang activity; mentors were criminals, gang members, and drug dealers; lack of recommended psychological treatment; and a continuing supportive family. The jurors concluded that the aggravating circumstances outweighed the mitigating but imposed upon Summers a sentence of life without the possibility of parole for Thomas's murder.
The district court later entered a judgment of conviction on June 30, 2005, sentencing Summers to two consecutive terms of life in prison without the possibility of parole for the first-degree murder with the use of a deadly weapon, and various concurrent and consecutive terms for the attempted murder and assault convictions. When Summers was asked by the district court during sentencing if he had anything to say, Summers replied, "It is what it is." This appeal followed.

DISCUSSION
I. Application of the Confrontation Clause and Crawford v. Washington to a capital penalty hearing
Summers contends that the Confrontation Clause and Crawford apply to a capital penalty hearing and therefore the admission of nearly 835 pages of documentary exhibits containing testimonial hearsay violated his right to confrontation.[3] We disagree.
The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses *782 against him." The United States Supreme Court held in its 2004 opinion Crawford that the admission of testimonial hearsay statements violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her.[4]
We have never fully addressed the relevance of the Confrontation Clause in a capital penalty hearing. This court recognized in Lord v. State[5] that the right to confrontation applies in capital penalty hearings in one respect: admitting a nontestifying codefendant's confession generally violates a defendant's right to confrontation under Bruton v. United States.[6]Lord addressed only the Bruton question and did not otherwise explore the right to confrontation at a capital penalty hearing.[7] We limit Lord to its facts.
Guiding our decision today is the Supreme Court's 1949 opinion Williams v. New York.[8] The Court recognized in Williams that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination."[9] The Court rejected the contention that a death sentence based on information from witnesses whom the defendant had not been permitted to confront violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[10]
Williams has since been relied upon for the proposition that the Confrontation Clause does not apply to capital sentencing.[11] Although the continuing viability of Williams has been called into question,[12] in our view, and that of the Ninth Circuit Court of Appeals, it remains good law.[13]Crawford did not overrule Williams.[14] Indeed, the Supreme Court has yet to address whether its opinion in Crawford has any bearing on any sentencing proceedings, capital or otherwise.[15]
The Court in Crawford indicated no intent or basis to extend the Sixth Amendment to capital penalty hearings. No federal circuit courts of appeals have extended Crawford to a capital penalty hearing, and the weight of authority is that Crawford does not apply to a noncapital sentencing proceeding.[16]
*783 We have recognized that under NRS 175.552(3) hearsay is generally admissible[17] in a capital penalty hearing.[18] Absent controlling authority overruling Williams and extending the proscriptions of the Confrontation Clause and Crawford to capital penalty hearings in Nevada, we are not persuaded to depart from our prior jurisprudence and extend to capital defendants confrontation rights under Crawford.
We therefore conclude that neither the Confrontation Clause nor Crawford apply to evidence admitted at a capital penalty hearing and the decision in Crawford does not alter Nevada's death penalty jurisprudence. Because Summers did not enjoy a right to cross-examine[19] the declarants who were the source of alleged testimonial hearsay within documentary exhibits admitted at his capital penalty hearing, he has shown no error occurred on this issue.
The concurring and dissenting justices in this appeal would extend the Supreme Court's holdings in Ring v. Arizona[20] and Crawford and hold that the right to confrontation applies to the jury's eligibility determination in a capital sentencing proceeding. Notwithstanding this conclusion, however, the separate concurring and dissenting opinion recognizes that the Confrontation Clause does not apply to the jury's deliberations with respect to the penalty that should be imposed on a defendant whom the jury has found to be death eligible. Even assuming that our dissenting and concurring colleagues have correctly foreseen that the Supreme Court will someday hold that Crawford and the Confrontation Clause are applicable to the eligibility phase of a capital sentencing proceeding, in our view, Nevada's capital sentencing scheme permitting unbifurcated penalty hearings would remain constitutionally viable. We submit that such a holding would not require penalty hearings to be fragmented into phases where the jury separately considers and answers the factual questions relating to whether: (1) the alleged aggravating and mitigating circumstances have been established, (2) the aggravating circumstances outweigh any mitigating circumstances, and (3) the penalty of death should actually be imposed on a defendant whom the jury has found to be death eligible.
In this, we note that this court generally presumes that juries follow district court orders and instructions.[21] In Tavares v. State,[22] for example, this court implicitly recognized that jurors are intellectually capable of properly following instructions regarding the limited use of prior bad act evidence. If jurors can perform an act of intellectual discrimination permitting consideration of prior bad act evidence for one purpose, but not for another, they are most certainly intellectually capable of following a clear instruction directing that they must refrain from considering testimonial hearsay in deciding a capital defendant's death eligibility, but that they may nonetheless consider such evidence in deciding whether to actually impose a death sentence on a defendant whom they found eligible to receive it.[23] Our view in this *784 respect is confirmed by the fact that the jurors in the instant case found the aggravating circumstances outweighed the mitigating circumstances but did not sentence Summers to death. Thus, the jury's verdict in this case clearly evinces the jury's capability to intellectually discriminate between the types of evidence presented and to impose a just sentence.
II. Other claims raised by Summers on appeal
In addition to his Confrontation Clause and Crawford claim, Summers raises four other claims on appeal. We have carefully reviewed each of these claims, and we conclude that they do not warrant any relief.
First, Summers contends that juror 661 was biased because one of the prosecutors once dated her daughter. However, Summers did not challenge juror 661 for cause, and our review of her examination during voir dire does not reveal that she was biased or improperly seated in violation of his constitutional right to a fair and impartial jury.[24]
Second, Summers contends that the district court committed judicial misconduct and failed to exercise self-restraint and impartiality during his counsel's cross-examination of State witness Albert Paige by interpreting Paige's answers and failing to admonish Paige for answering questions with questions. However, the cross-examination of Paige was contentious, and the district court was acting to maintain control over the trial and did so without clear objection from Summers.[25]
Third, Summers contends that the district court abused its discretion by denying separate motions for a mistrial. One motion was made during the guilt phase based on a statement by State witness Frederick Ameen regarding threats to his life. However, this statement was not elicited by the State, and the district court ordered it stricken. The other motion was made during the penalty hearing and was based on several instances of alleged prosecutorial misconduct. We discern no misconduct in the instances cited by Summers on appeal. Summers has failed to demonstrate the district court abused its discretion by denying either of his mistrial motions.[26]
Finally, Summers contends that he was denied a fair trial because of cumulative error.[27] For the reasons already discussed above, we conclude that Summers is not entitled to relief on this claim or any other he raises on appeal.

CONCLUSION
Neither the Confrontation Clause nor Crawford extend to evidence admitted during a capital penalty hearing. We conclude that this issue, along with the others Summers raises, does not warrant reversal of his conviction or sentence. We affirm.
BECKER, GIBBONS and PARRAGUIRRE, JJ., concur.
ROSE, C.J., with whom MAUPIN and DOUGLAS, JJ., agree, concurring in part and dissenting in part.
Although I agree with the majority that Summers is not entitled to relief, I dissent in regard to the majority's conclusion that the Confrontation Clause and Crawford v. Washington[1] do not apply to capital penalty hearings. The majority opinion relies on a fifty-seven-year-old *785 United States Supreme Court case that was decided well before any of the United States Supreme Court's more recent death penalty pronouncements. The United States Supreme Court has not addressed this precise issue but has given very clear indications that Williams v. New York[2] is no longer viable. I elect to follow those clear indications.
The Sixth Amendment to the United States Constitution provides that a criminal defendant enjoys the right "to be confronted with the witnesses against him." Crawford holds that the admission of testimonial hearsay statements violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant.[3] The Supreme Court has yet to address whether Crawford has any bearing on sentencing proceedings or capital penalty hearings,[4] which, as discussed below, are not equivalent.
This court has already recognized that the right to confrontation applies in capital penalty hearings in at least one respect. In Lord v. State, we held that admission of a nontestifying codefendant's confession generally violates a defendant's right to confrontation.[5]Lord did not otherwise explore the scope of the right to confrontation at a capital penalty hearing.[6]
Further exploration of this question requires the initial recognition that a capital penalty hearing has two distinct aspects: an eligibility phase and a selection phase. The Supreme Court has identified and described these two aspects.[7] During the eligibility phase, "the jury narrows the class of defendants eligible for the death penalty."[8] In the selection phase, "the jury determines whether to impose a death sentence on an eligible defendant."[9] Moreover, the Supreme Court accords these two phases "differing constitutional treatment."[10]
It is in regard to the eligibility phase that we have stressed the need for channeling and limiting the jury's discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition. In contrast, in the selection phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination.[11]
This court has similarly distinguished two aspects of a capital penalty hearing, specifically in regard to the jury's treatment of evidence. Although NRS 175.552(3) provides broadly that during a penalty hearing "evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence," the last type of evidence"other matter" evidenceis not admissible to determine death eligibility.
"Other matter" evidence is not admissible for use by the jury in determining the existence of aggravating circumstances or in weighing them against mitigating circumstances. *786 Such use of this evidence would undermine the constitutional narrowing process which the enumeration and weighing of specific aggravators is designed to implement.[12]
Therefore, jurors may consider "other matter" evidence only in the selection phase, after they have determined whether the defendant is eligible for a death sentence.[13]
As I will explain, a defendant is entitled to confront the witnesses against him in the eligibility phase of a capital penalty hearing because it is during this phase that the jury must determine whether the elements of capital murder have been established.
The majority observes that hearsay evidence is generally admissible in a capital penalty hearing under NRS 175.552(3), but such a statutory provision must yield to any contrary requirement under the Confrontation Clause. The majority also relies on the Supreme Court's 1949 decision in Williams v. New York, which rejected the contention that a death sentence based on information from witnesses whom the defendant had not been permitted to confront violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[14] The Court was concerned that sentencing judges would lose access to a good deal of relevant information if they could only consider information "given in open court by witnesses subject to cross-examination."[15]Williams, however, is nearly 60 years old and is no longer authoritative given the Supreme Court's subsequent jurisprudence.
The Supreme Court has not directly addressed this issue since Williams. In pre-Crawford decisions, the Seventh and the Fourth Circuit Courts of Appeals have relied on Williams in concluding that the Confrontation Clause does not apply to capital penalty hearings.[16] Other federal courts have not considered the matter to be so settled,[17] and the Eleventh Circuit Court of Appeals has recognized a right to cross-examination at capital penalty hearings.[18] In other decisions predating Crawford, state courts have also reached differing conclusions on whether the Sixth Amendment right to confrontation applies to capital penalty hearings.[19]
The majority emphasizes that the Supreme Court has not overruled Williams. But this does not justify rigid adherence to Williams given the undeniable evolution of the Court's jurisprudence on this matter over the succeeding decades as well as the weight of authority from other courts that have reached this issue. Williams long predates the Supreme Court's many decisions since 1976 that recognize that death is different; these decisions have established separate *787 penalty hearings in capital cases[20] and afforded a number of constitutional safeguards in those hearings.[21] In 1983, the Supreme Court justified its conclusion that expert testimony on future dangerousness is admissible at a capital penalty hearing by recognizing that "the rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the factfinder, who would have the benefit of cross-examination and contrary evidence by the opposing party."[22] Given all this subsequent case law, Williams's conclusion that no distinction need be made between capital penalty hearings and noncapital sentencing proceedings[23] is no longer viable.[24]
Indeed, in Specht v. Patterson in 1967, the Supreme Court expressly declined to extend Williams to a "radically different situation" and held that the right to confrontation, among others, applied at a sentencing hearing where the sentence might be based on "a new finding of fact."[25] In 1981, the Court noted the similarity between the sentencing hearing in Specht and a capital penalty hearing.[26] And in 2002 in Ring v. Arizona, the Court held that aggravating circumstances function as elements of capital murder and under the Sixth Amendment right to a jury trial, must be found by jurors, not judges.[27] Consequently, Specht and Ring are more apposite than Williams to the issue of the Confrontation Clause's application to the eligibility phase of a capital penalty hearing.
Given the trend in the Supreme Court's decisions over the last four decades and its specific holdings in Ring and Crawford, I conclude that the Sixth Amendment right to confrontation applies to evidence presented during the eligibility phase of a capital penalty hearing. This conclusion is supported by a number of other judicial decisions by both state courts[28] and federal district courts.[29]
On the other hand, I see no basis in either Ring or Crawford to extend the Sixth *788 Amendment confrontation right to the selection phase of a capital penalty hearing.[30] As stated above, the Supreme Court has accorded the two aspects of capital penalty hearings "differing constitutional treatment,"[31] stressing "the need for channeling and limiting the jury's discretion to ensure that the death penalty is a proportionate punishment" only in regard to the eligibility phase, while permitting "broad inquiry" in the selection phase.[32] The selection phase of a capital penalty hearing is analogous to a noncapital sentencing hearing, where the sentencer decides the actual sentence based on the offense, which has already been established, and its accompanying sentencing parameters.[33] And the weight of authority is that the Confrontation Clause and Crawford do not extend to noncapital sentencing proceedings.[34] I therefore conclude that the right to confrontation does not apply to evidence presented during the selection phase of a capital penalty hearing.
In this case, however, the penalty hearing was conducted in a single proceeding, without any bifurcation of the eligibility and selection phases. So the issue is how to apply the Confrontation Clause and Crawford to such an unbifurcated capital penalty hearing.
This court has never required bifurcated proceedings in capital penalty hearings.[35] Yet we have also never precluded district courts from bifurcating penalty hearings, and district courts certainly have the discretion to do so. Indeed, bifurcation is the better practice since it prevents the possibility that jurors will be improperly influenced by "other matter" evidence in determining the existence and the weight of aggravating circumstances and mitigating circumstances. And bifurcation is also better because it provides two distinct proceedings in which the right to confrontation first applies and then does not apply. Given the practical difficulties that arise when the two aspects of a penalty hearing are not separated into distinct proceedings, I would hold that when a capital penalty hearing is not bifurcated, the Confrontation Clause and Crawford must apply to the entire hearing.
When a capital penalty hearing is bifurcated, the eligibility phase remains insulated from the broad range of "other matter" evidence admissible during the selection phase. Furthermore, bifurcation permits confrontation issues to be dealt with solely in the eligibility phase, when the jury is still determining whether the elements of capital murder exist. Once that determination has been made, presentation of evidence in the selection phase can then proceed without confrontation concerns. When a penalty hearing is not bifurcated, the State's eligibility-phase evidence and selection-phase evidence are mingled in a single presentation, giving rise to the risk that the jury's initial death-eligibility determination will be affected by selection-phase evidence that is irrelevant to death eligibility.
This court has recognized this risk previously but held that appropriate instructions can meet the concern that jurors might consider improper evidence in determining *789 death eligibility.[36] This approach is no longer satisfactory, however, because the Ring and Crawford decisions present us with heightened constitutional, as well as practical, concerns. Ring has accentuated the gravity of the jury's task in determining the elements of capital murder. We must not permit this task to be improperly affected either by "other matter" evidence or by testimonial hearsay evidence that has not been subjected to cross-examination. These risks cannot adequately be addressed through devising additional instructions or requiring courts to determine which evidence presented by the State is subject to an intermittently arising right of confrontation on the part of the defendant over the course of an unbifurcated penalty hearing.
Bifurcation precludes these risks and presents a workable solution that promotes the efficient administration of justice.[37] An unbifurcated hearing does not. Thus, I conclude that where a hearing is unbifurcated, the Confrontation Clause and Crawford must apply to evidence admitted during the entirety of the hearingboth its eligibility and selection aspects.
The majority contends that I am requiring capital penalty hearings to be bifurcated. I have made no such requirement and have merely concluded that Crawford's protections should be applied differently depending on whether the proceeding is bifurcated. Accordingly, here, because Summers's capital penalty hearing was not bifurcated, his right to confrontation applied to testimonial hearsay throughout the entire hearing.
Further, I disagree with the majority that limiting instructions will sufficiently protect a defendant against a constitutional violation in a death penalty proceeding. The discrete evidentiary distinctions made in the eligibility and selection phases of a capital penalty hearing are not easily compartmentalized. In addition, emotions are elevated in most death penalty cases making it much more difficult to ignore certain evidence for one purpose but then use that same evidence for another purpose.
As has often been said, death is different. With regard to jurors' ability to follow limiting instructions in this difficult and emotional area, I believe "that the practical and human limitations of the jury system cannot be ignored."[38] Eligibility determinations in death penalty cases are situations where the system's fallibility must be conceded. Accordingly, I disagree with the majority, and I conclude that limiting instructions cannot cure this potential for violation of constitutional rights in death penalty hearings.
The final question is whether Summers's confrontation rights were violated. Summers contends that the admission of documentary exhibits consisting of nearly 835 pages during his penalty hearing violated his confrontation rights. These documents included LVMPD records and arrest reports; a 1996 judgment of conviction for robbery and possession of a stolen vehicle; juvenile and family court records; LVMPD gang unit investigation cards; and inmate disciplinary reports.[39]
However, Summers has not demonstrated any prejudice. He not only initially failed to provide this court with copies of the documents on appeal,[40] but he has failed to specify any statements within these documents that violated the Confrontation Clause or to explain how they were prejudicial. Review of the documents reveals that they do include some statements containing testimonial hearsay. Thus, these statements were likely admitted in violation of the Confrontation Clause and Crawford.
Nevertheless, this court may deem a constitutional error harmless where it is clear *790 beyond a reasonable doubt that the verdict rendered was "`surely unattributable to the error.'"[41] I am confident that any Confrontation Clause errors that occurred here were harmless beyond a reasonable doubt. Even if the testimonial hearsay had been stricken, the basic information damaging to Summers's case still would have been presented to the jury, i.e., the nature and number of his prior arrests, convictions, and inmate disciplinary violations. Also, it is pertinent that Summers was sentenced only to a term of life in prison without the possibility of parole, not death, even though the jury found that the aggravating circumstances outweighed the mitigating circumstances. Given Summers's extensive criminal history and the nature of the murder in this case, it is clear beyond a reasonable doubt that even if testimonial statements within the documentary exhibits had been excluded from evidence, the jury still would not have imposed a sentence of life with the possibility of parole.
Therefore, I concur with the majority's conclusion that reversal of Summers's sentence is not warranted.
MAUPIN and DOUGLAS, JJ., concur.
NOTES
[1] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] Bowman testified at trial that Summers actually had the handgun when the two initially entered the motel room.
[3] The State contends that this issue was improperly preserved for our review. Although Summers's objections to the admission of the documents were less than specific, we conclude that they were sufficient to preserve this issue for our review.
[4] 541 U.S. at 68-69, 124 S.Ct. 1354.
[5] 107 Nev. 28, 43-44, 806 P.2d 548, 557-58 (1991).
[6] 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[7] Cf. Kaczmarek v. State, 120 Nev. 314, 335-36, 91 P.3d 16, 31 (2004) (concluding that barring a defendant from cross-examining a witness regarding her opinion on the proper sentence during a capital penalty hearing did not violate the Sixth Amendment).
[8] 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
[9] Id. at 250, 69 S.Ct. 1079.
[10] Id. at 242-52, 69 S.Ct. 1079.
[11] See, e.g., Szabo v. Walls, 313 F.3d 392, 398 (7th Cir.2002) (citing Williams for the proposition that "the Supreme Court has held that the Confrontation Clause does not apply to capital sentencing"); Bassette v. Thompson, 915 F.2d 932, 939 (4th Cir.1990); see also U.S. v. Littlesun, 444 F.3d 1196, 1198-1200 (9th Cir.2006) (citing Williams in holding that Crawford did not alter its jurisprudence that hearsay is generally admissible at noncapital sentencing), cert. denied, ___ U.S. ___, 127 S.Ct. 248, ___ L.Ed.2d ___ (2006).
[12] See U.S. v. Brown, 441 F.3d 1330, 1361 n. 12 (11th Cir.2006); Maynard v. Dixon, 943 F.2d 407, 414 n. 5 (4th Cir.1991) (recognizing that conflicting authority exists as to whether the Confrontation Clause applies in capital penalty hearings).
[13] See Littlesun, 444 F.3d at 1200.
[14] Id.
[15] See U.S. v. Katzopoulos, 437 F.3d 569, 574 (6th Cir.2006) ("An issue unaddressed by Crawford is whether the Sixth Amendment right to confront witnesses applies similarly at sentencing.").
[16] See, e.g., U.S. v. Luciano, 414 F.3d 174, 179 (1st Cir.2005); U.S. v. Martinez, 413 F.3d 239, 242-43 (2d Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1086, 163 L.Ed.2d 902 (2006); U.S. v. Stone, 432 F.3d 651 (6th Cir.2005), cert. denied, ___ U.S. ___, 127 S.Ct. 129, ___ L.Ed.2d ___ (2006); U.S. v. Roche, 415 F.3d 614, 618 (7th Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 671, 163 L.Ed.2d 541 (2005); U.S. v. Brown, 430 F.3d 942, 943-44 (8th Cir.2005); Littlesun, 444 F.3d at 1199-1200; U.S. v. Chau, 426 F.3d 1318, 1323 (11th Cir.2005).
[17] Evidence must still be reliable and relevant, and the danger of unfair prejudice must not substantially outweigh its probative value. See Hollaway v. State, 116 Nev. 732, 746, 6 P.3d 987, 997 (2000); Parker v. State, 109 Nev. 383, 390-91, 849 P.2d 1062, 1066-67 (1993).
[18] See Thomas v. State, 114 Nev. 1127, 1147, 967 P.2d 1111, 1124 (1998).
[19] But this court has recognized in Buschauer v. State, 106 Nev. 890, 894, 804 P.2d 1046, 1048-49 (1990), a limited right to cross-examination during a criminal sentencing proceeding. Our decision today does not overrule Buschauer.
[20] 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[21] See Allred v. State, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004).
[22] 117 Nev. 725, 733, 30 P.3d 1128, 1133 (2001).
[23] See also Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (statements elicited from a defendant in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), can be used to impeach the defendant's credibility, even though they are inadmissible as evidence of guilt, so long as the jury is instructed accordingly); Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (evidence of a defendant's prior convictions could be introduced for purposes of sentence enhancement, so long as the jury was instructed it could not be used for purposes of determining guilt).
[24] See Weber v. State, 121 Nev. 554, 585, 119 P.3d 107, 125 (2005); see also United States v. Martinez-Salazar, 528 U.S. 304, 313, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).
[25] See Oade v. State, 114 Nev. 619, 621-22, 960 P.2d 336, 338 (1998) (holding that "[a] trial judge has a responsibility to maintain order and decorum in trial proceedings" and allegations of "[j]udicial misconduct must be preserved for appellate review").
[26] See Rudin v. State, 120 Nev. 121, 142, 86 P.3d 572, 586 (2004).
[27] See Hernandez v. State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002) ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually.").
[1] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
[3] 541 U.S. at 68-69, 124 S.Ct. 1354.
[4] See U.S. v. Katzopoulos, 437 F.3d 569, 574 (6th Cir.2006) ("An issue unaddressed by Crawford is whether the Sixth Amendment right to confront witnesses applies similarly at sentencing.").
[5] 107 Nev. 28, 43-44, 806 P.2d 548, 557-58 (1991) (applying Bruton v. United States, 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)).

This court has also recognized a limited right to cross-examination during a criminal sentencing proceeding. See Buschauer v. State, 106 Nev. 890, 894, 804 P.2d 1046, 1048-49 (1990) (holding that where a victim-impact statement refers to specific prior acts of the defendant, due process requires, among other things, an opportunity to cross-examine the accuser, but declining to bar all hearsay evidence in an impact statement).
[6] Cf. Kaczmarek v. State, 120 Nev. 314, 335-36, 91 P.3d 16, 31 (2004) (concluding that barring a defendant from cross-examining a witness regarding her opinion on the proper sentence during a capital penalty hearing did not violate the Sixth Amendment).
[7] Buchanan v. Angelone, 522 U.S. 269, 275, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998).
[8] Id.
[9] Id.
[10] Id.
[11] Id. at 275-76, 118 S.Ct. 757.
[12] Hollaway v. State, 116 Nev. 732, 746, 6 P.3d 987, 997 (2000); (citation omitted); see also Evans v. State, 117 Nev. 609, 635-37, 28 P.3d 498, 516-17 (2001).
[13] Hollaway, 116 Nev. at 746, 6 P.3d at 997.
[14] 337 U.S. 241, 242-52, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
[15] Id. at 250, 69 S.Ct. 1079.
[16] Szabo v. Walls, 313 F.3d 392, 398 (7th Cir. 2002) (citing Williams for the proposition that "the Supreme Court has held that the Confrontation Clause does not apply to capital sentencing"); Bassette v. Thompson, 915 F.2d 932, 939 (4th Cir.1990).
[17] See Maynard v. Dixon, 943 F.2d 407, 414 n. 5 (4th Cir.1991) (recognizing that conflicting authority exists as to whether the Confrontation Clause applies in capital penalty hearings); U.S. v. Lee, 374 F.3d 637, 649-50 (8th Cir.2004) (addressing whether appellant's confrontation rights were violated during his capital penalty hearing where the government did not contest that he had such rights); U.S. v. Hall, 152 F.3d 381, 406 (5th Cir.1998) (assuming, without deciding, "that the Confrontation Clause applies to the sentencing phase of a capital trial"), abrogated on other grounds by United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).
[18] U.S. v. Brown, 441 F.3d 1330, 1361 n. 12 (11th Cir.2006); Proffitt v. Wainwright, 706 F.2d 311 (11th Cir.1983) (concluding that the Confrontation Clause extends to capital penalty hearings in regard to the right to cross-examine the author of a psychiatric report; limiting its holding in Proffitt v. Wainwright, 685 F.2d 1227, 1251-55 (11th Cir.1982)).
[19] Compare, e.g., Sivak v. State, 112 Idaho 197, 731 P.2d 192, 211 (1986) (holding that a capital defendant does not have confrontation rights in a penalty hearing), and State v. Grisby, 97 Wash.2d 493, 647 P.2d 6, 15-16 (1982), with Walton v. State, 481 So.2d 1197, 1200 (Fla.1985).
[20] See Gregg v. Georgia, 428 U.S. 153, 195, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (stating that concerns that the death penalty not be imposed in an arbitrary or capricious manner "are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information").
[21] E.g., Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that the Sixth Amendment requires a jury to find the facts rendering a defendant eligible for death); Bullington v. Missouri, 451 U.S. 430, 446, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (holding that the Double Jeopardy Clause applies to capital penalty decisions); Gardner v. Florida, 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion) (holding that due process was denied when a death sentence was based in part on information that a defendant had no opportunity to deny or explain).
[22] Barefoot v. Estelle, 463 U.S. 880, 898, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (emphasis added).
[23] See 337 U.S. at 251, 69 S.Ct. 1079.
[24] See Hatch v. State of Okl., 58 F.3d 1447, 1465 (10th Cir.1995) ("The Court has since discredited some of the logic that undergirded its decision in Williams."), overruled in part on other grounds by Daniels v. U.S., 254 F.3d 1180, 1188 n. 1 (10th Cir.2001).
[25] 386 U.S. 605, 608-10, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).
[26] See Bullington, 451 U.S. at 446, 101 S.Ct. 1852.
[27] 536 U.S. at 609, 122 S.Ct. 2428.
[28] See State v. McGill, 213 Ariz. 147, 140 P.3d 930, 942 (2006) (recognizing that confrontation rights extend to the aggravation phase, but not to the penalty phase, of a bifurcated capital penalty hearing); Rodgers v. State, ___ So.2d ___, ___ 2006 WL 3025668, at *4-6 (Fla. Oct.26, 2006); Russeau v. State, 171 S.W.3d 871, 880-81 (Tex. Crim.App.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2982, 165 L.Ed.2d 990 (2006).
[29] See U.S. v. Johnson, 378 F.Supp.2d 1051, 1060-62 (N.D.Iowa 2005) (applying confrontation rights to the eligibility phase); U.S. v. Bodkins, 2005 WL 1118158, at *4-5 (W.D.Va. May 11, 2005) (same); U.S. v. Jordan, 357 F.Supp.2d 889, 902-03 (E.D.Va.2005) (same); see also U.S. v. Mills, 446 F.Supp.2d 1115, 1135 (C.D.Cal. 2006) (applying confrontation rights to all phases of a capital penalty hearing).

I am aware of but one court since Ring and Crawford that has reached a result that may be contrary to this conclusion. See Call v. Polk, 454 F.Supp.2d 475, 501-04 (W.D.N.C.2006) (concluding that a state court did not render a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court).
[30] Ring, 536 U.S. at 597 n. 4, 122 S.Ct. 2428 (noting that Ring did not argue the Sixth Amendment required the jury to determine whether to impose death and that the plurality opinion in Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), observed that such a requirement has never been suggested).
[31] Buchanan, 522 U.S. at 275, 118 S.Ct. 757.
[32] Id. at 275-76, 118 S.Ct. 757; cf. Hollaway, 116 Nev. at 746, 6 P.3d at 997.
[33] Selection-phase evidence, of course, to be admissible must still be reliable and relevant, and the danger of unfair prejudice must not substantially outweigh the probative value of the evidence. See Hollaway, 116 Nev. at 746, 6 P.3d at 997; Parker v. State, 109 Nev. 383, 390-91, 849 P.2d 1062, 1066-67 (1993).
[34] See, e.g., U.S. v. Stone, 432 F.3d 651 (6th Cir.2005), cert. denied, ___ U.S. ___, 127 S.Ct. 129, ___ L.Ed.2d ___ (2006); U.S. v. Roche, 415 F.3d 614, 618 (7th Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 671, 163 L.Ed.2d 541 (2005); U.S. v. Brown, 430 F.3d 942, 943-44 (8th Cir. 2005); U.S. v. Littlesun, 444 F.3d 1196, 1199-1200 (9th Cir.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 248, ___ L.Ed.2d ___ (2006).
[35] Johnson v. State, 118 Nev. 787, 806, 59 P.3d 450, 462 (2002); see also Weber v. State, 121 Nev. 554, 584, 119 P.3d 107, 128 (2005); McConnell v. State, 120 Nev. 1043, 1061-62, 102 P.3d 606, 619 (2004).
[36] See Evans, 117 Nev. at 635-37, 28 P.3d at 516-17; see also Hollaway, 116 Nev. at 746, 6 P.3d at 997.
[37] See U.S. v. Mayhew, 380 F.Supp.2d 936, 957 (S.D.Ohio 2005) (recognizing that bifurcation of a capital penalty hearing alleviates concerns over the Confrontation Clause and Crawford).
[38] Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[39] In Thomas v. State, 114 Nev. 1127, 1147-48, 967 P.2d 1111, 1124-25 (1998), this court held that prison inmate disciplinary reports may be admissible under the business records exception to the hearsay rule. See NRS 51.135. In light of Crawford, the continuing viability of Thomas for this proposition is doubtful where the disciplinary reports contain testimonial statements.
[40] See NRAP 10(a)(1); NRAP 11(a)(1).
[41] Flores v. State, 121 Nev. 706, 721, 120 P.3d 1170, 1180 (2005) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).